———o—

I. J. JONES Defendant in Error, *vs.* ELIJAH JONES, Plaintiff in Error.

1. *Practice, civil—Instructions—Commenting on testimony.*—An instruction, commenting upon particular portions of testimony, to the exclusion of others, although correct *pro tanto*, is calculated to mislead the jury, and should be refused.

*Error to Osage Circuit Court.*

*Lay & Belch*, for Defendant in Error.

*Ewing & Smith*, for Plaintiff in Error.

NAPTON, Judge, delivered the opinion of the court.

This suit was brought in 1869, by a son against his father, to recover an alleged indebtedness of the latter to the former, growing out of a series of transactions between them, commencing in 1859, and continuing to 1863.

The petition, in substance, alleges that the plaintiff owed the defendant about $3000, and gave his note to defendant for that sum with interest—and then proceeds to aver payments

at various times; first, by a note from James N. Jones, a brother of plaintiff, made payable to defendant in 1860, for $985, which note was procured—as alleged by the plaintiff—and accepted by the defendant, as a payment on his, the plaintiff's note; second, by a transfer to defendant of a claim against said James N. Jones' estate, for $200; third, by the transfer of certain promissory notes of one Wakefield, amounting to $375, payable to defendant, and agreed to be credited on said note of plaintiff; fourth, by the value of a carding machine, alleged in the petition to have been converted to defendant's use, and which is put down at $1000; and fifth, by collecting claims or notes of plaintiff, to the amount of $4000, principally on one Johnson.

And the plaintiff claims, as the result of this account, an indebtedness of defendant, to him of $3,500.

The defendant in his answer, insists that the plaintiff owed him in 1860 about $4000; insists that he received the note of James N. Jones as collateral, and avers that he never collected a cent on said note—ignores the indebtedness of said James N. Jones' estate to plaintiff in the sum of $200, and denies that he received such transfer of said asserted claim as part payment to him—denies that he received the notes of Wakefield as payment, and says they never were paid—admits that the carding machine was transferred to him, but denies the value asserted in the petition. The answer denies the collection of $4000 for plaintiff.

The testimony in the case is reported in a bill of exceptions, which it is difficult to decipher; but as the main points in it have a bearing on the instructions given, and a suit of this sort is somewhat of a novelty, I have endeavored to gather the material facts appearing.

The plaintiff and defendant, father and son, are the principal witnesses.

The plaintiff, the son, states that in 1860 he owed his father about $3000; that he paid it all off; that in 1863 he sold Wm. Johnson a tract of land; that in that year his brother, Jas. A. Jones, who lived in Texas county, owed him

$985 ; that he further agreed to take this note and credit him with the amount; that his father also agreed to take Wakefield's notes for $375, and gave him credit for that sum ; that his brother, J. A. Jones, died in 1861, owing him about $200; that his father administered on the estate, and that his father and Wm. Johnson and himself, went to Texas county to look into this matter, and his father thought the estate would pay nothing, and therefore, the credit of $985 could hardly be allowed. However, his father ultimately agreed to allow this $985 and the $200 claim ; but in 1862, hearing that he reached a different conclusion, the plaintiff went to his house and claimed a credit of $985 and $200 and $375 on Wakefield, which he refused to allow. The plaintiff then, as he says, sold his farm, and leased some property to Johnson for $4000, and he offered his father Johnson's note for the $4000 to pay up. His father said that would overpay him, but he would take it. He accordingly handed over Johnson's notes and lifted his notes.

The defendant, the father, stated that in 1854 he loaned the plaintiff and another son of his $900 ; they were in partnership at Stonery Point ; that they got, between 1854 and 1859, 100 bushels of corn at 50 cents per bushel, a mare worth $60, pork, oxen and 1200 lbs bacon; that in 1857 they got $1500 in gold ; that they owed him $3,500 or $3,600 when he took plaintiff's notes. The firm was dissolved in about a year. He took plaintiff's notes about 1858 for $3,500, bearing ten per cent. interest. In 1857 he received a note of James A. Jones to him, for $987, which his son, the plaintiff, desired him to take, and he did so. He received the Wakefield notes in 1857. He also got four notes on Johnson, for $1000 each, to be paid in pine lumber. The James A. Jones note was never paid ; he never heard of the account against his estate for $200. He received the Wakefield notes as payment. In 1863 his son prepared a settlement. After final settlement, this witness states, he (plaintiff) borrowed $300, and he kept this till it amounted to $460.50, and then it was settled. He afterwards borrowed $150 of witness, and his wife gave her note. He never claimed that plaintiff owed him anything.

This witness, who is the father of plaintiff, then states, " I stated that the Johnson notes overpaid the principal of Irwin's indebtedness to me, but not the interest. I do not owe Irwin anything that I know of."

These are the main facts of the case, derived from the statement of the father and son. They show very clearly that there was no ground for this action.

There was then evidence introduced to contradict the testimony of the defendant, and to sustain it. It was clear that the plaintiff admitted a settlement with his father, and that he stated on various occasions, that he owed his father nothing; that they were even ; that he was " out of father's clutches."

The fact of his borrowing money of his father after this, and giving his note and his wife's note, is almost conclusive evidence that he had no claim against him.

But the facts are only important to this court in determining the propriety of the instructions to the jury. Juries are the judges of facts, and we cannot disturb their verdict, however abhorrent it may be to our views.

The petition in this case was informal, but no demurrer was filed; there was in it a recital of various items of indebtedness, but in substance it was a claim for the amount of money asserted to be due from defendant on a running account between the parties. A single clause in the petition sounds like a claim for a trespass or trover and conversion; but taking the whole petition together, we may infer that the trespass was waived.

There are not five counts in the petition, nor can we understand the plaintiff as claiming but one judgment. The motion in arrest for defects in the petition may therefore be properly overruled.

The question arises on the instructions.

The 3rd instruction given for the plaintiff is as follows: "If the jury believe from the evidence that the plaintiff was the owner of the carding machine mentioned in the petition, and the defendant took the same and converted it to his own

use, they would find for the plaintiff the value thereof." And 4th, "although the jury may believe from the evidence, that the plaintiff did duly deliver to the defendant the Johnson notes, and did receive his own without demanding a credit for the Jas. A. Jones' note and account, the Wakefield's note and the carding machine, and did state to persons that he had given these claims to the defendant to 'get out of his clutches' and did say that they 'were even,' yet if the jury further believe from the evidence, that the plaintiff never had any credit for the same, and never received value therefor, they will disregard such declarations, and find according to the weight of evidence, unless the jury shall find that a settlement was made between the parties, and the notes, accounts and carding machine were included in the said settlement."

The 5th instruction for plaintiff was, "If the jury believe from the evidence, that any witness swore willfully falsely as to any matter material to the issue on this cause, they will disregard such false statements, and may disregard the whole of such witness' testimony.

The objection to the 4th instruction is, that although abstractly correct, and to a certain extent applicable to the facts in evidence, and to the main issue regarding the alleged settlement, yet it calls the attention of the jury to specific portions of the testimony, and directs the jury to disregard these declarations of plaintiff, if they believe the weight of evidence is against this truth.

It will be observed that there was testimony, that after the alleged settlement between the father and son in 1863, the plaintiff borrowed considerable sums of money from the defendant, and gave his notes for the same. No reference is made in the instruction to this proof, which certainly, without explanation, was very strong proof that the plaintiff did not consider his father indebted to him in the sum of $3000, or any other sum, when he borrowed $350 of him, and gave his note for it. This instruction is calculated to mislead the jury by allowing them to disregard all testimony showing plaintiffs declarations, if, upon the whole evidence, they

should conclude that his admissions were made in ignorance of his rights. At the same time there was other evidence in the case tending to the same result, and to this evidence no reference is made in the instruction. This instruction was a comment upon a particular part of the evidence ; it was a correct comment, but it was well calculated to mislead the jury. The entire evidence was for their consideration, and the admissions of plaintiff were a part of this, and entitled to due weight. So, also, was the evidence in regard to the loans of money made after 1863.

The fifth instruction is one frequently given, and, we believe, has been sustained by this court. It is undoubtedly law, but it is frequently calculated to mislead juries. It would be much better to tell a jury that they need not believe any witness any farther than they believe he speaks the truth. And it would be still better to say that the credibility of all witnesses is for them to determine, and that the whole evidence in the case is for their consideration.

The verdict in this case seems to be unfounded, and not supported by the evidence, but this court has no power to interfere with the verdict of juries, after they have been sanctioned by the judge presiding on the trial.

We shall reverse the judgment in this case, however, because of the 4th instruction, and remand the case for a new trial. Judgment reversed, and cause remanded.