————o————

RICHARD S. EDWARDS, Respondent, vs. CHARLES P. SMITH, ADMINISTRATOR OF THE ESTATE OF ALEX McALLISTER, DEC'D, Appellant.

1. *Contracts, written—Parol testimony as to, when admissible.*—A written instrument is the consummation of all previous and cotemporaneous negotiations, and its meaning, if clear, cannot be subverted or varied by parol. But if it be obscurely expressed, and a knowledge of the relations of the parties and their antecedent acts, and of the subject matter of the contract is requisite to a clear understanding of its purport, parol testimony in relation thereto is admissible.

2. *Contract—Consideration may be inquired into, when.*—The consideration of a contract, not stated on the face of the instrument, or so stated as to leave the real consideration in doubt, is always a proper subject of inquiry.

3. *Contracts must be construed by the court—Jury, what question may be submitted to.*—It is the exclusive province of the court to construe a written instrument. If words of doubtful or ambiguous meaning are employed, their meaning may be left to a jury; but the court must determine the interpretation of the contract, with such light as the verdict may afford.

4. *Contract—Patent—Agreement with agent to procure—Guaranty—Inutility of patent no defense, when*—Where the inventor having agreed to pay an agent a sum of money to procure a patent for an invention, afterward, by an arrangement with his agent and a third party, transferred his interest to the latter, who in consideration of the transfer assumed the obligation of the inventor, and it appeared that the agent had no interest in the patent, and gave no warranty nor made any false or fraudulent representations touching the patent, the party assuming the obligation could not defend against his liability by proof that the patent was of no value.

5. *Receipts—Parol evidence as to.*—It is well established that receipts are subject to explanation by parol.

6. *Practice, civil—Instruction—Oral direction by court to jury to disregard.*—An oral direction by the court to a jury before submission of the cause, to disregard a wrong instruction, is not error.

*Appeal from Buchanan Circuit Court.*

*Davis & Rea, with W. C. Smith,* for Appellant.

I. The testimony of Catharine Edwards contradicted the written contract, and was improper. (Greenl. Ev., 8th ed., §§ 275, Bunce vs. Beck, 43 Mo. 266 ; Murdock vs. Ganahl, 47 Mo. 137.)

II. The evidence shows that the consideration, if any, for the agreement of McAllister to pay the $700 was, that McAllister was to have a half interest in the patent, and he had therefore a right to show that the invention was worthless, and that the consideration of the contract had failed. (Jolliffe vs. Collins, 21 Mo. 339 ; Dickerson vs. Hall, 14 Pick. 220 ; Lowell vs. Lewis, 1 Mass. 186 ; Van Ostrand vs. Reed, 1 Wend. 225; Barr vs. Baker, 9 Mo. 850.)

III. The question whether the receipt for $55, "in full of all demands," was intended to cover defendant's liability under the contract, should have been left to the jury. (Gibson vs. Hanna, 12 Mo. 162 ; Grumley vs. Webb, 44 Mo. 144; 2 Pars. Contr., 5th Ed., 618–19 ; 2 Penn. 120 ; 2 Hill [N. Y.], 228 ; Coke Litt. 508.)

IV. The court could not by oral statements to counsel take from the jury a question submitted by a written instruction.

*J. D. Strong*, for Respondent.

I. The terms of the contract were doubtful, and the testimony of Catharine Edwards was competent to explain it. (Greenl. Ev. §§ 280, 282, 288, 293.)

II. Burnside's testimony that the machine was useless, was properly excluded. The contract contained no warranty in respect to it. If the consideration of the promise to pay the $700, as between Hart and McAllister, failed, the failure cannot be pleaded against plaintiff ; Hart is in fault, not plaintiff.

The first instruction asked for defendant was properly refused. It assumed that the receipt covered the demand sued on, although the manifest date of the receipt, and the testimony of Catharine Edwards, showed the contrary. It ignores the rule that the facts which it recites may be contradicted by oral testimony. (2 Greenl. Ev. § 305.)

The matter from the discussion of which counsel was stopped was entirely foreign and extraneous, and the action of the court was entirely proper.

NAPTON, Judge, delivered the opinion of the court.

This action originated in the probate court of Andrew county. The claim presented there was based on an instrument of writing, signed by both plaintiff and defendant, and the amount of $726.80 was allowed the claimant. An appeal was taken to the circuit court of Andrew county, and, by change of venue, was transferred to Buchanan.

It is difficult to understand the case without a literal copy of the written contract, which, being evidently the work of an illiterate person, disregards all rules of syntax and orthography, and is, moreover, somewhat obscure as to the consideration of the obligation.

The following is a copy :

"STATE OF MISSOURI AND COUNTY OF ANDREW,
December 23, 1869.

To all to whom these presents may come, Greeting :—Know ye that I, Richmond S. Edwards, of the first part, and Alexander McAllister, of the second part, *doth* bargain, contract and agree that the said Alexander McAllister of the second part is to pay to the said Richard S. Edwards of the first part the sum of one hundred and thirty-five dollars for Jacob Hart and fee hereinafter mentioned also, and one model on combined spring stone drill, on which Jacob Hart now petitions the government for letters patent on, and the said Alexander McAllister contracts, bargains and agrees to pay the said Richard S. Edwards the one-half of the above amount specified in hand, and furthermore, it is expressly agreed that the within mentioned Alexander McAllister shall pay to the within named Richard S. Edwards the sum of ($700) seven hundred dollars without defalcation or discount, which amount shall be made due and payable on the first Monday of March, in the year eighteen hundred and seventy-three (1873), and the said Alexander McAllister is to have for the above fees mentioned the half interest in the letters patent on the said Jacob Hart's invention for a stone drilling machine. And the said Richard S. Edwards binds himself under forfeiture of the above amount of ($700), seven hundred dollars not to make the bond publick over sixty days of being due. And of the $100.35 first mentioned the half thereof

is to be paid in hand as above agreed (and the remainder at ten per cent.) which would leave 67½, sixty-seven dollars and fifty cents to the said Richard S. Edwards of the first part ; and if the said Jacob Hart does not get a patent allowed to him by the commissioner of patents that the said Richard S. Edwards as aforesaid is to forfeit or *loose* the remainder which is sixty-seven dollars and fifty cents ($67½). Alexander McAllister having paid the said Richard S. Edwards $50 dollars of the amount agreed on as to be paid to *he* whether the patent be allowed to Jacob Hart or not, which leaves $17.50 to be paid on the half now due to the Richard S. Edwards.

As witness our hands and seal—the date above written.

(Signed) RICHARD S. EDWARDS. [Seal]
(Signed) A. McALLISTER [Seal]"

The indorsements on this paper are as follows :

" Bond between Richard S. Edwards and A. McAllister. Savannah, Mo., Dec. 28, 1869.

Credit the within bond by the $17½ seventeen dollars and fifty cents, due on the same at the present date.

Savannah, Mo., Feb. 22, 1870.

Credit the within bond by $20 received to date, and Apr. 5, 1870, credit the within bond by $47½ forty-seven dollars and fifty cents." This bond was accompanied with the requisite affidavit required in the probate court.

On the trial in the circuit court a jury was impaneled. It was agreed that a patent issued to Hart, for the rock-drilling machine, dated 15th of March, 1870. A conveyance or assignment of a half interest by Hart to McAllister was read dated on the 14th March, 1870.

The plaintiff, after reading the contract above copied, introduced as a witness Catharine M. Edwards, a sister of the plaintiff, who stated she was present, saw this contract written and signed ; that plaintiff and Hart and McAllister were all present ; that in the summer of 1869, Hart came to her brother to employ him to get the invention through the office at Washington, and her brother said he would charge him $1000 for such services. Hart wanted Edwards to take territory in payment, but Edwards

declined, and it was finally agreed that for $700 or $800, Edwards was to carry out the invention, which Hart was to pay or " get some one else to do so ; " that Hart employed her brother to build a model for which he (Hart) was to pay $35.

In regard to what occurred on the day when the written contract was signed, this witness was further allowed to state, objections of the defendant notwithstanding, that when Hart and McAllister came to her brother's house, McAllister examined the model, and plaintiff explained it to him. McAllister sa id it was a good thing and wanted to go into the invention, and did not want any one else to go into it. She then stated that the agreement between Hart and McAllister and Edwards was, that McAllister should take Hart's place in the contract to pay the $700 or $800, previously made between Hart and Edwards ; that Edwards proposed that McAllister should go and get a lawyer to write the agreement, but McAllister objected and said 'he " did not want any one else to get into it," or any one else to know of it, and that plaintiff could write, and accordingly it was written by the plaintiff. The plaintiff was a carpenter and was agent of one Brown, in Washington, a patent solicitor. Hart was the inventor, and Edwards put Hart's suggestions in form and made the model.

This witness saw the money paid, which is credited on the written contract, and also saw McAllister pay her brother $55 for a test machine.

An exception was taken to the admission of this evidence, on the ground that the written contract was the best and only evidence of the intent of the parties, and parol evidence could not vary or contradict it.

The plaintiff rested his case at this point, and the defendant moved for an instruction that the plaintiff was not entitled to recover, which motion the court overruled.

The defendant then offered a receipt, dated February 22, 1870, signed by the plaintiff, "for $60 for Geo. E. Brown, Washington, D. C., for the condition of patent on combined spring stone-drill, and $20 for the government for issuing the patent on the same to Jacob Hart." This receipt was excluded as irrelevant, and the defendant excepted.

The defendant then, after some unimportant testimony, offered a copy of a receipt proved to have been lost, dated in March or February, 1871, for $55 " in full of all demands," signed by Edwards, the plaintiff. This evidence was admitted, and it was conceded that such a receipt was given, but claimed that it had no connection with the contract sued on.

Judge Kelly was then called as a witness, who stated, that, when a notary public, he had taken the acknowledgment of Hart's assignment of one-half interest in the patent stone-drill to Mc-Allister; that Hart, McAllister and plaintiff were all present and talked about the trade, and the witness understood from what was said between the parties that plaintiff had some interest in the patent, and McAllister was taking plaintiff's place in the matter, that is, that plaintiff was selling out to McAllister his interest in the patent; but the witness had no distinct recollection of what was said, only an impression left on his mind to the effect above stated.

Another witness was called (Burnside) who stated that McAllister brought a stone-drilling model machine to his shop and left it there several months. Here the defendant offered to prove that this pretended rock-drilling machine was a useless and worthless machine, and that the patent read in evidence was useless and worthless, and was so at the time it was issued by the government; but the court refused to hear this testimony, on the ground of irrelevancy; that it made no difference whether the patent was useful or not. To this ruling an exception was taken.

Catharine Edwards was then recalled by the plaintiff, in regard to the lost receipt for $55, and stated that her brother had made a test machine for McAllister, for which McAllister was to pay $75; that after the machine was built, her brother told McAllister that he was sick and needed money, and would take $55 in full of the $75, which was due; that McAllister paid the $55 and her brother gave the receipt, a copy of which had been produced by one of defendant's witnesses.

This was all the evidence, and the court instructed the jury, at the request of the plaintiff, " that by the written contract between plaintiff and deceased, Alex. McAllister, read in evidence,

the said McAllister bound himself, conditionally, to pay to plaintiff seven hundred dollars on the third day of March, 1873, and the jury were directed to find a verdict for the plaintiff for said sum with interest from March 3rd, 1873, at six per cent., unless they further believed from the evidence that the amount so agreed to be paid had been paid, satisfied or released. The defendant asked the following instructions, all of which were refused.

1. If the jury believe from the evidence that plaintiff gave a receipt to McAllister, dated after the execution of the contract given in evidence, between plaintiff and McAllister, by which plaintiff acknowledged the receipt of a certain sum in full of all demands, then the jury will find for the defendant.

2. If the jury believe from the evidence that plaintiff gave the receipt, proved in evidence, for $55 in full of all demands, dated after the execution of the contract read in evidence, to-wit, the 23rd of December, 1869, and that it was intended to be in satisfaction of the liability of McAllister on the contract, the foundation of the claim, the jury will find for the defendant.

3. If the jury believe from the evidence that the consideration of the $700, mentioned in the contract, was a half interest in letters patent on Jacob Hart's invention of a stone-drilling machine, and the jury further believe that the conveyance of the half interest in said machine was made before the patent issued, and was not recorded in the patent office at Washington city until after the issuing of the patent, the consideration has failed, and the jury will find for the defendant.

The case having been submitted to the jury on the single instruction given for the plaintiff, the defendant's counsel proceeded to argue to the jury the question of a satisfaction of the plaintiff's demand, under the instruction, whereupon he was stopped by the court propounding the question whether he had any other point to argue, and, upon a negative reply, was told by the court that defendant's instruction on that point had been refused, and there was no evidence to support it, and that all that part of the instruction given, relating to satisfaction of the claim, was surplusage ; that there was no evidence before the jury of satisfac-

tion, etc., that the $55 receipt had nothing to do with the present claim. An exception was taken to this oral explanation of the court.

The verdict and judgment were for the plaintiff for the amount of $700 and interest at 6 per cent.

The first point submitted for the reversal of this judgment, is the admission of the testimony of Catharine Edwards, and the ground of the objection is, that the paper writing alone could be used to ascertain the intention of the parties.   We do not regard this evidence as conflicting with the well established rule in regard to parol testimony.

There is no doubt that the written instrument is the consummation of all previous or contemporaneous negotiations, and its meaning, if clear, cannot be subverted or varied by parol. But a contract, like the present, may be obscurely expressed, and a knowledge of the relations of the parties, their antecedent acts, and the subject matter of the contract, may enable a court clearly to understand what otherwise would be ambiguous or obscure. The consideration of a bargain may always be inquired into, although on the face of the written instrument it may not be stated, or so stated as to leave the real consideration in doubt.

The testimony of the plaintiff's sister did not conflict in any way with the paper drawn up as the contract between him and McAllister.   It explained the real character of the transaction, which, on the face of the paper, might not be clearly understood, as it was undoubtedly very awkwardly expressed.

The previous negotiations between the plaintiff and Hart, the inventor, explain how it happened that McAllister became indebted to plaintiff in the sum of $700.   Hart, it seems, was the inventor and wished his invention patented, and knowing the plaintiff's connection with persons at Washington city, whose business it was to get inventions patented, applied to the plaintiff and agreed to pay him seven hundred dollars for his services in corresponding with the agent at Washington, and putting his conceptions in the tangible shape of a model.  Hart was to pay this money to Edwards, or procure some one else to do so, and McAllister was the man whom he procured and persuaded to assume

this liability, he, Hart, consenting to convey one-half interest in the patent to McAllister for so doing.

The consideration for this obligation then, so far as the plaintiff was concerned, was the assumption of Hart's debt of seven hundred dollars. The plaintiff had no interest in the patent, and could of course convey none; and McAllister chose to rely on Hart's assumption to convey this interest, when the patent issued. Accordingly the court construed the contract, as the explanation of the witness justified; and, if the testimony of Catharine Edwards was worthy of credit, no other construction could have been given. No attempt was made to impeach her testimony, and, indeed, it bears on its face marks of truthfulness, as it consists exactly with every proved fact in the case, and in no wise tended to contradict or vary any single clause of the written instrument.

It is the exclusive province of the court to construe a written instrument. If words of doubtful meaning are employed, or such as have more than one meaning, the question whether their technical sense is different from their ordinary meaning, may be left to a jury; but, in the end, the court must determine the interpretation of the contract with such light as the verdict may afford on the question submitted to the jury. (Hutchinson vs. Bowker, 5 Mees. & Wel., 540.)

In the present case there was no conflict of testimony. The testimony of Judge Kelly I do not regard as anywise conflicting with that of Catharine Edwards. The judge had an impression, derived from an imperfect understanding of the facts, that the plaintiff owned one-half of the patent, and that the sale of this interest was the consideration of the note in question. Had the judge been apprised of the antecedent history of the transaction, as disclosed by the first witness, he could not have had such an impression, though it was natural that he should have so concluded from all that transpired in his presence, when acting as a notary. It is perfectly plain that the plaintiff had no interest in the patent.

And this brings us to the consideration of the second point urged for a reversal of this judgment, which is, the exclusion by the court of evidence to show the inutility of the patent. But it is obvious that, if the consideration moving the plaintiff to ac-

cept McAllister as his debtor in place of Hart had no connection with any assumption on his part to convey the patent, and the plaintiff had no interest himself in the patent, such a defense would be entirely irrelevant to the action. McAllister had the same means of determining the value of the patent as the plaintiff, and there is no pretense of any warranty on the part of the plaintiff, or of any false or fraudulent representations concerning it, nor indeed of any representations. The plea of failure of consideration, therefore, which might have availed the defendant had the contract been based on a transfer from the plaintiff, was outside of the case; and the evidence on that point was properly excluded.

As to the attempt to use before the jury the receipt for $55, given by the plaintiff in 1871, " in full of all demands," the evidence clearly established that the payment of this sum and the receipt in full had no connection whatever with the agreement in suit. There was no contradictory evidence on the point, and receipts, it is well established, are subject to explanation by parol. It will be observed that the sums of money credited on the agreement, together with the $50 paid at the date, exactly amount to the $135 named in the agreement.

The remark of the judge to the jury upon interrupting the argument of the defendant's counsel, we take to be substantially nothing more than a withdrawal, by the court, of the latter clause of the instruction given, which ought not to have been given, and which was given inadvertently and, therefore, properly withdrawn. There was no evidence, in truth, to justify any instruction about satisfaction or payment; for there was no proof of any. Had the jury found otherwise than as they did, the court would undoubtedly have set aside the verdict; and it would be useless for us to send a case back for what could at most be termed a harmless blunder, corrected by the court before any mischief could have resulted from it.

The judgment must be affirmed. All the other judges concur, except Judge Vories, who is absent.