Isaac Weil et al., Respondents, v. Joseph Schwartz, Appellant.

Kansas City Court of Appeals, April 5, 1886.

1. Contracts—Construction of—Rules Governing.—Among the well recognized rules in the construction of contracts, as to particular words and phrases therein, is, that they are to be taken in their obvious meaning and ordinary acceptation in the community. And if they have acquired among a certain class of persons, or tradesmen, a different or special signification, they are to be so applied by the court in construing the contract. But this latter rule involves an element and an issue of fact always to be found by a jury, and then to be applied by the court.

2. ——— Application of Rule to—Case Adjudged.—Where one man inquires of another "whether a third party is good for a bill of goods," the inquiry has reference only to the financial responsibility of the debtor, and the ability of the creditor to make his debt by legal process in the ordinary form. It does not refer to the moral character and trustworthiness of the party.

3. ——— Interpretation of Doubtful Words.—If the meaning of the word employed is doubtful or ambiguous the court may receive extrinsic evidence to go to the jury to aid in the construction. And where it is doubtful whether a certain word was used in a sense different from the ordinary acceptance, the court will refer the question to the jury ; the court should not declare the meaning of such a word, as matter of law.

4. Practice—Instruction—Should not Single out a Particular Fact.—An instruction should not single out a particular fact, an element of proof bearing on an issue in the case, and tell the jury it will or will not defeat a recovery. It is for the jury to respond to its probative force, and the defendant is entitled to have it considered by the jury, in connection with all the facts and circumstances in proof.

5. Statute of Frauds—Assurances—Effect of.—Where assurances concerning the credit of another are made in writing, and along with them verbal assurances are made co-operating to induce the credit, still, in order to recover, the jury must believe that plaintiff *mainly* and *substantially* relied upon the writing.

Appeal from Jackson Circuit Court, Hon. F. M. Black, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action to recover damages alleged to have been sustained by plaintiffs by reason of the false and fraudulent representations and assurances of defendant respecting the credit of one J. B. Isaacson.

The petition alleges substantially, that plaintiffs, a partnership firm doing business as merchants at the city of St. Joseph, Missouri, were applied to on the twenty-seventh day of February 1882, at St. Joseph by said Isaacson, a merchant doing business at Kansas City, Missouri, to purchase a bill of goods on a credit of four months ; and not being acquainted with the financial standing, etc., of said Isaacson they addressed to the defendant, a mutual friend and acquaintance, a merchant at said Kansas City, the following letter :

"St. Joe, Mo., February, 27, 1883.
"*Mr. Joseph Schwartz, Kansas City, Mo. :*

"My Dear Sir : How is J. B. Isaacson, 507 Main street, Kansas City ? Is he good for a bill, say five hundred dollars, four months ? Telegraph at our expense.                    Yours, etc.,
"I. Weil & Co."

To which the defendant sent the following answer by telegraph :

"Kansas City, Mo., 2–28–1883.

"I. Weil & Co. : Consider J. B. Isaacson good for all the goods he wants.

"Jos. Schwartz."

Whereby, it is alleged, the defendant intended to deceive and defraud plaintiffs into giving said credit, by falsely inducing them to believe that said Isaacson was good for all the goods he might purchase, and that defendant believed him to be worthy of credit ; well knowing at the time that the representation so made

was false, that said Isaacson was not good and worthy of credit as therein stated; and that relying upon said representation so made they were induced to make the sale, on a credit of four months, of a bill of goods amounting to the sum of five hundred and twenty-four dollars. It is also alleged that before and at the time of sending said telegram the said Isaacson was wholly insolvent, and the defendant then and there well knew the fact; that Isaacson has failed to pay for the goods, according to contract; whereby a cause of action has accrued to plaintiffs to demand and recover the same from defendant, etc.

The answer tendered the general issue.

The principal facts developed at the trial, about which there is no material conflict of evidence, showed the sending and receipt of the letter, and the telegram in answer thereto, and the sale of the goods as alleged. Plaintiffs' evidence tended to show that at the time of sending the telegram Isaacson was possessed of little, if any, property outside of the goods he was buying on credit, that he was practically insolvent, and that defendant knew these facts.

On the twenty-first day of March, 1883, the plaintiffs, having learned that Isaacson had given a chattel mortgage on his stock of goods, wrote to defendant, making inquiry thereof. To which defendant answered, in substance, that defendant had bought a safe on which there was such mortgage, and that this fact gave rise to the rumor, and proposed, that for ten per cent. he would guarantee the payment of plaintiffs' claim, as Isaacson was "O. K. and solid." This offer was declined. During that summer Isaacson bought goods on credit of parties in Chicago, and in July his stock was seized under writs of attachments sued out by said Chicago creditors, and the mother-in-law and sister-in-law of defendant and the defendant himself, by virtue of which Isaacson's entire stock of goods were sold, and appropriated by said attaching creditors.

Plaintiffs' evidence tended to show that the said claims, of defendant, the mother-in-law and sister-in-law, were fictitious and fraudulent as to the creditors of Isaacson.

Plaintiffs also introduced evidence tending to show that during season of 1882 defendant had made false statements to the commercial agency of Dun & Company, of Chicago, touching the responsibility and credit of Isaacson, on the faith of which Isaacson had obtained the credit in Chicago and elsewhere.

Defendant gave evidence in contradiction.

On behalf of plaintiffs the court gave the following instructions to the jury:

"1. If you find from the evidence that the defendant, in answer to an inquiry made by the plaintiffs, sent to them the telegram read in evidence; that the defendant Isaacson was not then good for, or was not worthy of credit for a bill of goods of five or six hundred dollars; that defendant then knew that Isaacson was not good for that amount on a credit, or knew that he was unworthy of a credit of that amount; that defendant made the statement in said telegram for the purpose of deceiving the plaintiffs; that the plaintiffs were thereby induced to and did sell said Isaacson a bill of goods for about five hundred dollars on a credit, relying on the truth of said statement; and that the plaintiffs have been damaged by the false representations, then you should find for the plaintiffs."

"2. In determining the questions of fact submitted to you by these instructions, you will take into consideration all the facts and circumstances in evidence, and give to them such weight as you believe they are entitled to have. The fact that defendant offered to guarantee the debt of the plaintiffs for ten per cent. thereof, does not defeat a recovery in this case, if you find the facts stated in the various instructions to be true."

"3. If you find for the plaintiffs, you will assess

their damages at such an amount as they have sustained by reason of the said representations of the defendant, not exceeding the amount of the bill of goods sold to Isaacson, with six per cent. interest thereon, from the time the same became due to this date."

"4. Before the plaintiffs can recover in this cause it must appear to your satisfaction by a fair preponderance of the evidence, that the statement made in said telegram was contrary to the fact; that Isaacson was not good for or was not worthy of credit for the amount of the bill of goods sold to him by the plaintiffs; that defendant knew that Isaacson was not good for such a bill on credit, or knew that he was unworthy of credit to that extent; that the telegram was sent, as it was, for the purpose of deceiving plaintiffs, and that the plaintiffs were thereby, in connection with what had previously transpired between them and defendant, induced to make the sale to Isaacson."

The defendant asked the following instructions:

"1. The jury are instructed that the validity of Schwartz's, the defendant's, debt against Isaacson is not an issue in this case."

"2. If the jury believe from the evidence that, at the time defendant sent the telegram to plaintiffs, John B. Isaacson was good for the amount of goods plaintiff sold him, the verdict must be for defendant."

"3. Fraud is not to be presumed, must be proved, and before the plaintiffs are entitled to recover, they must satisfy you by a preponderance of evidence that John B. Isaacson was not good for the amount of goods plaintiff sold him, at the time defendant sent the telegram, and that defendant knew that he was not good; that defendant sent the telegram with the fraudulent intent to induce plaintiffs to act on it; that plaintiffs were ignorant of Isaacson's condition, and relied on defendant's telegram in making the sale, and were induced so to do, by reason thereof; that, in consequence of

defendant's false representations, they have been damaged."

"4. If the jury believe from the evidence that after the defendant had sent the telegram, and after plaintiffs had sold Isaacson the goods, defendant offered to guarantee the whole of plaintiffs' claim against Isaacson for ten per cent., and plaintiffs' declined to accept the same, then plaintiffs are not entitled, in any event to recover against defendant, more than ten per cent. of the amount of their said claim."

"5. If the jury believe from the evidence that, at the time defendant sent the telegram, he believed Isaacson to be good for the amount of plaintiffs' bill, and that said telegram was not sent with the intent to deceive or defraud plaintiffs, then the verdict must be for defendant, even though the jury may further believe, from the evidence, that Isaacson was insolvent prior to the maturity of plaintiffs' bill, and that said bill has never, in fact, been paid."

"6. The validity of the indebtedness of Mary Perlinsky, or Paulina Jacobs, against John B. Isaacson, is not in issue in this case."

"7. Before the plaintiffs can recover a verdict for anything in this case, you must find, from a fair preponderance of evidence, that the representations contained in the telegram sent by defendant to plaintiffs were false, to the knowledge of the defendant, and that they were made intentionally to deceive and induce the sale of goods by plaintiff to John B. Isaacson on credit. In other words, before plaintiffs are entitled to a verdict, you must be satisfied from all the evidence: (1) That the representations contained in the telegram were contrary to the fact, and that John B. Isaacson was not at the time good for the amount of goods plaintiffs sold him. (2) That defendant knew said representations were contrary to the fact at the time they were made. (3) That it was the false representations that gave rise to the sale of the goods by plaintiffs to Isaacson. (4) That

said Isaacson had not, at the time of the institution of this suit, sufficient means in this county subject to attachment or execution out of which plaintiffs could make their debt."

The court gave only the instruction number five, and after adding the words, "and worthy of a credit for" after the word "good" to instruction number two, gave it.

The jury returned a verdict for plaintiffs in the sum of $547.70.

Defendant has brought the case here on appeal.

LATHROP & SMITH, for the appellant.

I. The *first* instruction was erroneous. It added to the ground of assurance given, another, "that he was not worthy of credit." The assurance given was only of pecuniary responsibility, and not of his trustworthiness.

II. The *second* instruction singled out one piece of evidence and commented on it.

III. Plaintiffs' *third* instruction allowed interest on account from the time it became due. It could only be changed from the time of demand, by the filing of suit.

IV. Plaintiffs' *fourth* instruction also added to the assurances given, another, and authorized the jury, take both into consideration.

V. Defendant's instructions which were refused should have been given. They were predicated on the fact that the assurances were limited to the pecuniary condition, the financial responsibility, of the person concerning whom inquiry was made, and not as to his integrity or trustworthiness. The instruction given by the cour of its own motion, contained the vice of the *first* and fourth, given by it for the plaintiffs.

VI. In support of the positions urged herein reference is made to the following authorities : *Avery v. Chapman*, 72 Iowa, 144; *Marsh v. Falker*, 40 N. Y. 562 ; *Savage v. Jackson*, 19 Georgia, 305 ; Kerr on Fraud, 82 ; *Upton v. Vail*, 6 Johns. (N. Y.) 181 ; *Gage v. Lewis*, 68 Ill. 604 ; *Hammond v. Chamberlain*, 26 Vt. 406 ; *Cook v. Nathan*, 16 Barb. (N. Y.) 342.

BOTSFORD & WILLIAMS, and HENRY WOLLMAN, for the respondents.

I. The false representations having been made by written telegram signed by defendant, he is liable. Rev. Stat., sect. 2575.

II. The *first* instruction for plaintiffs is correct. The telegram should be construed by the court in the light of all the surrounding facts and the relations of the parties. *Edwards v. Smith*, 613 Mo. 19. It is the duty of the court to construe contracts and writings, and the court properly construed the telegram in the first instruction. *Edwards v. Smith*, *supra*.

III. Plaintiffs' *second* instruction did not comment upon any part of the evidence, but told the jury to consider all the facts and circumstances in evidence.

IV. The measure of damages was right in the *third* instruction. The liability was for the *loss of the debt* by the wrong done by defendant. So the *fourth* instruction is correct. It was sufficient if the plaintiffs were, by the telegram, "in connection with what had previously transpired between them and defendant, induced to make the sale to Isaacson." *Talton v. Wade,* 18 C. B. 371; 86 Eng. C. L. Rep. 371; *Cahn v. Reid,* 18 Mo. App. 115; *Bassett v. St. Joseph*, 53 Mo. 290.

V. The instructions which were refused to defendant were properly refused. Taking all the instructions together they were exceedingly fair to defendant, and possibly required plaintiffs to show more than the law strictly required of them.

PHILIPS, P. J.—I. The errors assigned for reversal of this judgment arise on the action of the trial court in giving and refusing instructions. The first and fourth instructions given for plaintiffs are objected to, *inter alia*, because of the employment of the words: "was not worthy of a credit," "or knew that he was unworthy of a credit."

It must be kept in mind that this action is based solely on the written correspondence between the parties, and that defendant's liability must spring from the assurance contained in his telegram. Conceding that the telegram should be read and interpreted in connection with the letter of inquiry, it will be seen that the only inquiry made by plaintiffs was whether Isaacson was "*good*" for a bill, say of five hundred dollars, on four months' time. The answer employed the same word : " I consider him *good* for all the goods he wants."

What meaning, then, does the law attach to the word "good," as here employed? We are not left wholly to speculation in such an inquiry. Among the well recognized rules in the construction of contracts, as to particular words and phrases therein, is, that they are to be taken in their obvious meaning and ordinary acceptation in the community. And if they have acquired, among a certain class of persons or tradesmen, any different or special signification they are to be so applied by the court in construing the contract. But this latter rule involves an element and an issue of fact always to be found by a jury, and then to be applied by the court.

I take it to be beyond controversy that, when one man inquires of another whether A is good for a bill of goods, it implies, of course, that he is to obtain them on a credit, if at all, otherwise there would be no occasion for the inquiry. And I take it to be, further, as palpable that the inquiry has reference only to the financial responsibility of the debtor, and the ability of the creditor to make his debt by legal process in the ordinary form. It would be a strained and unusual meaning to attach to the inquiry that it referred to the moral character and trustworthiness of the party. To say "that the note of A is good " implies "that the maker is solvent, and that the amount can be collected by due course of law." *Cooke v. Na-*

*than,* 16 Barb. 344. So in *Hammond v. Chamberlain* (26 Vt. 406), where the defendant indorsed a note: "I hereby guarantee this note good until January 1, 1850," it was said by the court: "It is an obligation on his part having relation merely to the solvency and ability of the makers to pay the note; in other words, the defendant agreed that during the period mentioned in the guaranty, the makers of the note should be in that condition, that payment of the note could be enforced against them, if legal diligence was used for that purpose. The note was good, if during that period they had the means of payment, or if payment could be enforced by legal measures."

The plaintiffs did not ask information of defendant as to the trustworthiness of Isaacson, as to his integrity of character, or business habits; but they ask is he good for such a debt; can it be made in the ordinary course of law; should they give the credit?

The defendant answered according to the inquiry: I consider him good. How can the court add another word or another meaning to the term employed? The defendant had a right to choose the language in which he would make answer; and the court has no more right to extend its operation and meaning than it has to make a contract for the parties.

If the meaning of the word employed was doubtful or ambiguous the court might receive extrinsic evidence to go to the jury to aid in the construction. *Hutchison v. Barker,* 5 Mees. & W. 535. "And where it is doubtful whether a certain word was used in a sense different from its ordinary acceptance, it (the court) will refer the question to the jury." *Simpson v. Hargitson,* 35 Leg. Obs. 172; *Bunce v. Beck,* 43 Mo. 380. And in *Edwards v. Smith* (63 Mo. 127), Napton, J., announces the same doctrine. So, if in this case, the word "good" was used by defendant in the more extended sense asserted in the instructions, it presented a question of fact that should have been submitted to the jury.

Whereas, the court declared, as matter of law, that the word "good" implied more than Isaacson's solvency and financial responsibility, and embraced also trustworthiness, which implies "worthy of trust or confidence." (Web. Dic.)

Under this instruction, although the jury may have believed from the evidence that defendant did honestly believe, at the time he sent the telegram, that the debt could be made out of Isaacson's property by law and, that he was perfectly solvent, yet, if he had reason to believe that Isaacson was untrustworthy, not entitled to confidence, the defendant was still liable for the debt. The position is not defensible. The instructions were hurtful, and ought not to have been given.

II. The second instruction given on behalf of plaintiffs is faulty in that it told the jury: "The fact that defendant offered to guarantee the debt of the plaintiffs for ten per cent. thereof, does not defeat a recovery in this case," etc. This was a commentary on the evidence. It singled out a particular fact, an element of proof bearing on the question of defendant's good faith in making the assurance, and told the jury it did "not defeat a recovery in this case." It was for the jury to respond to its probative force ; and the defendant was entitled to have it considered by the jury, in connection with all the facts and circumstances in proof. *Jones v. Jones*, 57 Mo. 138; *State v. Smith*, 53 Mo. 267.

III. The third instruction is objected to by appellant, because it authorized the jury to allow interest on the account from the time it was due. The account became due on the twenty-eighth day of June, 1882. Unquestionably had the plaintiffs sued Isaacson, the principal debtor on this account, interest would have been allowable only from the day of demand of payment. Rev. Stat., sect. 2723; *Richardson v. Laclede Co.*, 76 Mo. 68; *Sutherland v. Ry. Co.*, 61 Mo. 89. The plaintiff can certainly have no greater measure of relief

against the party whom the law substitutes for the principal debtor than he could have against the latter. There was no proof of demand prior to the institution of suit, which was on the twenty-eighth day of September, 1882. It is apparent that the jury allowed interest from the twenty-eighth day of June. This was error.

IV. The fourth instruction is further objected to by appellant, because in determining the issue as to whether plaintiffs were induced to give the credit, the jury were authorized to take into consideration the telegram "in connection with what had previously transpired between plaintiffs and defendant." This had reference, admittedly, to the circumstance, developed in evidence, of one of the plaintiffs, some time prior to the correspondence, meeting defendant in Kansas City, and in the course of the conversation defendant stated to plaintiff that Isaacson was about to embark in business in Kansas City, and was engaged to be married to his sister-in-law; and that upon the consummation of the marriage his mother-in-law would give him fifteen hundred dollars.

Plaintiffs claim that this statement was false, and was fraudulently made to induce plaintiffs to give Isaacson credit. The objection to this part of the instruction is, that it authorized the jury to consider mere verbal assurances as a basis for plaintiffs' reliance in giving the credit, whereas the statute (sect. 2515, Rev. Stat.) declares, that: "No action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade, or dealings of any other person unless such representations or assurances be made in writing, and subscribed by the party to be charged thereby," etc.

I should have felt no hesitation in pronouncing this declaration of law to be in conflict with the letter and spirit of the statute, but for the authority of *Tatton v. Wade* (18 C. B. 371; 86 Eng. Com. Law Rep.) the *syllabus* of which would seem to give color of authority for the

instruction. But a careful reading of the case has satisfied me that it does not support the respondent, to say nothing of its abstract soundness. The facts of the case were, briefly, that one Case, who proposed to hire of plaintiff certain furniture, made to her certain representations concerning his employment and salary, and gave the defendant as reference. Thereupon plaintiff addressed defendant a letter of inquiry as to the truth of the statement, and requested defendant, if they were reliable, to guarantee the rent. Defendant made answer by letter, avouching the truth of the representations, but declined to guarantee the debt. This did not seem to be satisfactory to plaintiff, who then called in person upon defendant, and in the course of the interview the defendant made verbal assurances of the most positive character as to Case's reliability and statements. At the trial the plaintiff testified that she relied upon the verbal statements made to her by defendant in closing the contract with Case. Upon re-examination she so far rectified this as to say that she also relied upon defendant's letter, and would not have let the furniture but for the letter. The trial judge charged the jury, that from the evidence the inducement to the contract rested partly upon the verbal statements, and partly upon the letter ; "but that if they were of the opinion that the plaintiff was *substantially and mainly* induced by the letter to part with her furniture, the plaintiff was entitled to a verdict."

The common bench sustained the charge on the ground, that although there were verbal representations conspiring with the letter to induce the assent of plaintiff, yet, if she *substantially* relied on the letter, the defendant ought not to escape the responsibility of the written assurance, which substantially produced the injury. It may be conceded, for the purposes of this cause, that under the state of the proofs there, the plaintiff was entitled to go to the jury on the question whether she relied on the letter or the verbal representations as the

prime inducing cause. But that is not this case; and I am persuaded that the doctrine of that case is so suggestive of a mischievous precedent that I am unwilling to extend it in the least degree. The instruction in the case at bar simply told the jury that they could consider both the telegram and what had previously transpired verbally in determining the inducing cause. There is no qualification whatever. The jury were not advised on the authority of the case, *supra*, that if there had been verbal representations made by defendant conspiring with the letter to induce the credit, yet, before the plaintiff could recover, the jury must believe that plaintiff mainly and substantially relied upon the telegram. If the verbal statements had an influence upon the mind of the plaintiffs, the defendant was entitled to the benefit thereof, and to any advantage in argument springing from this circumstance. If he could persuade the jury that plaintiffs in extending the credit relied mainly and substantially on the verbal representations rather than the telegram, the converse of the proposition would follow, that the plaintiffs could not recover. But the instructions, as framed, did not embody this principle. It cut the defendant off entirely, and, without regard to the question of the main and substantial fact on which the plaintiffs relied, told the jury, in effect, that plaintiffs could rely on one in connection with the other, *i. e.*, on both taken together.

This, it does seem to me, would practically nullify the statute. The history of the first enactment of this statute by the English parliament furnishes most persuasive proof that its design and purpose were to cut up by the roots the great evil of the frequency and success of such actions based on mere loose verbal representations, by requiring the action to depend exclusively on the written undertaking, duly signed, by the party sought to be held. See *Lyde v. Branard*, 1 M. & W. 101; Parke B.; 1 Smith's Lead Cas. (4 Ed.) 144-146;

*Savage v. Jackson*, 19 Ga. 305. As said by Benning, J., in the case last cited: "When a statute says that a promise to answer for the debt of another, shall not bind, does it not say that any less thing shall not bind?" I cannot understand how, under this statute, if a part may rest upon a verbal representation, why the whole may not. If a part may be verbal and a part in writing, how much of each is essential to make the sum total of the *causa injuria?* Where shall the dividing line be drawn? The tendency of such a rule would be to invite the substitution of judicial discretion, and the caprice of the triers of the fact, for the more certain and explicit rule of the statute, until by imperceptible strokes of the keen blade of judicial construction, in ready hands, the purpose of the statute would either be whittled away altogether, or so weakened as to afford little protection against the very evil Lord Tenderden sought to uproot.

Again, the petition in this case counts expressly and alone upon the written telegram as the inducing cause. To predicate, therefore, a right of recovery, in whole or part, in an instruction on another conspiring cause was, under our system of pleading, a clear departure. *Kenney v. Ry. Co.*, 70 Mo. 252; *Price v. Ry Co.*, 72 Mo. 414; *Bell v. Ry. Co.*, 72 Mo. 50; *Benson v. Ry. Co.*, 78 Mo. 504; *State v. West*, 21 Mo. App. 309.

VI. We think the third instruction asked by defendant should have been given. It contained a correct proposition of law as applied to the facts of this case. *Gage v. Lewis*, 68 Ill. 604–615; *Avery v. Chapman*, 62 Ia. 144. On a re-trial the instructions can easily be reformed in conformity with this opinion.

Ellison, J.; concurring, the judgment of the circuit court is reversed and the cause remanded; Hall, J., absent.