## DAY v. GRIFFITH.

1. INDEFINITE AGREEMENT. A general parol agreement to secure a debt, without referring to any specific property, is too indefinite to be specifically enforced, especially when the rights of third persons intervene.

2. DELIVERY OF DEED. The delivery of a deed to the recorder for the use and benefit of the grantee, but without his knowledge or consent, does not pass the title to the grantee in such manner as to cut off or displace the rights of an attaching creditor which have intervened when the grantee assents to such delivery.

*Appeal from Lee District Court.*

TUESDAY, OCTOBER 6.

REPLEVIN for a piano, levied upon by the defendant as Sheriff, under an attachment in favor of Stevens against D. A. Day. The cause was referred to three referees, who found and reported the following facts: On the 1st of February, 1857, D. A. Day executed to plaintiff his promissory note for $350, payable in six months. November 11, 1858, said D. A. Day executed to plaintiff (J. H. Day) a bill of sale, conveying, with other property, the piano in question, for the purpose of securing $300, with ten per cent (part of said note of $350.) This bill of sale was acknowledged and recorded the day of its date. At this time J. H. Day was absent from home. It was executed without his knowledge, and filed for record by the said D. A. Day. Plaintiff had no knowledge of its existence until after the levy of said attachment, which was made January 24, 1859, nor was it accepted until after that time. Prior to the execution of the bill of sale, D. A. Day agreed to give plaintiff security for said note, but no particular property was mentioned or agreed upon. Stevens, the attachment creditor, with a knowledge that said bill of sale was on record, on the day prior to issuing the writ, asked plaintiff if he had any claim or lien on said piano, and he

answered that he had not; but at that time plaintiff had no knowledge of the existence of said bill of sale. Stevens relied on this statement in suing out his attachment.

Upon these facts a majority of the referees found, that the said bill of sale had not taken effect at the time of the levy, and that defendant should have judgment for a return of the said property, &c. One of the referees held and reported that when the bill of sale was placed in the hands of the recorder for record, it was a delivery in law to the grantee, unless he afterwards dissented therefrom. The judgment of the Court confirmed the report of the majority, and plaintiff appeals.

*Rankin & McCrary,* for the appellant, relied upon the following authorities: *Foley v. Howard,* 8 Iowa, 56 ; 2 Kent Com., 6th ed., 454, 455 ; *Verplanck et al.* v. *Steery,* 12 John., 536 ; 20 N. H., 140 ; 6 Gray, 124 ; 5 Barn. & Cres., 351.

*Henry Strong,* for the appellee, cited *Burrows et al.* v. *Lehndorff et al.,* 8 Iowa, 102 ; *Maynard* v. *Maynard et al.,* 10 Mass., 456 ; *Thayer* v. *Stark,* 5 Law R., 102 ; *Hulick* v. *Scovil,* 4 Gilm., 154 ; *Jackson* v. *Phipps,* 12 John., 418 ; *Ferguson* v. *Miles,* 3 Gill, 350 ; *Denton* v. *Perry,* 5 Verm., 382 ; *McGavran* v. *Haupt,* 9 Iowa, 83 ; 1 Par. Cont., 453 ; *Smith* v. *Moore,* 11 N. H., 55.

WRIGHT, J.—As applicable to the present controversy, the following general principles were recognized in *Foley* v. *Howard,* 8 Iowa, 56. Though a mortgage may be handed to the recorder for registry, by the mortgagor, if the mortgagee should subsequently assent to and adopt the same, such adoption, as between the parties to the instrument, may relate back to the time of its execution. Acceptance by the grantee of a deed, is necessary to a delivery, and when there is no delivery there is no deed. Actual manual delivery is not always necessary, but there must be that

which, in legal contemplation, is equivalent thereto. As a rule a party is presumed to assent to a grant which is plainly beneficial to him.) And while we still recognize the correctness of these several propositions, we doubt their applicability to the case before us.) The two cases are widely different in their actual facts. In the case cited, Foley claimed title under one Ibbotson, an alleged grantee of Michael Howard. To prove title in Ibbotson, complainant (Foley) introduced a certified copy of a mortgage from said Ibbotson to Howard, and from this fact, claimed as a legal and legitimate presumption or consequence, that Howard (who, it was admitted, once held the title) had conveyed to Ibbotson. But Howard denied all knowledge of such mortgage. There was no other proof that he ever conveyed to Ibbotson; nor did it appear who left the mortgage with the recorder, nor that it ever was in the possession of the mortgagee. Howard never accepted or claimed any benefit from the supposed security, but, on the contrary, uniformly repudiated it. In the present case, the mortgagor previously agreed to give security for the plaintiff's debt. The instrument was filed for record by the debtor, without the creditor's knowledge, but accepted by him two months afterwards, and after the levy of the Stevens attachment. The question now to be determined, therefore, is whether there had been such a delivery of the bill of sale, at the time of the levy of the attachment, as to vest the property in plaintiff, or, in other words, whether his subsequent acceptance of the security can, as against the attachment creditor, relate back to the time of its execution.

In view of the respective rights of the parties to this controversy, we attach but little weight to the prior agreement or promise of D. A. Day, to secure the plaintiff. There was certainly no contract which, as between them, even, could, in equity, have been enforced. A verbal agreement as general and indefinite as this, referring to no spe-

cific property, will not be regarded, if a specific performance is sought, and especially so where the rights of third persons intervene. *Cole* v. *Dealham*, Garnishee, 13 Iowa, 551. If such agreement is to have weight, it is upon the principle, that the subsequent security was, presumptively, at least, beneficial to the creditor, and obviated the necessity of an open, positive assent, on his part, to make the delivery effectual and complete, from the time of handing the same to the recorder.

Cases are not wanting to show, that if a deed is left by the grantor with the recorder for record, for the use of the grantee, the subsequent assent of the grantee will relate back, and make the delivery complete from the time of leaving the same for registry. And the same is true when left with any other third person, under the same circumstances. But we have found no case which holds that this assent will relate back to the delivery of the deed to the register, where it is not made for the use of the grantee, the rights of attaching creditors intervening. And though thus delivered for the use of the grantee, but without his knowledge, it is at least doubtful, under the authorities, whether his subsequent assent will relate back to the original deposit, so far as to defeat intervening rights. The maxim is, that relation is a fiction of law, and that it shall do no wrong to strangers. Broom, 54; *Jackson* v. *Bard*, 4 John., 230. Mr. Washburn, in his late work on Real Property, says: " Although several of the cases seem to sustain the doctrine, that a delivery of a deed to a stranger for the grantee, when it is obviously for his benefit, passes the title at once, as an effectual delivery; the better opinion seems to be that no deed can take effect as having been delivered until such act of delivery has been assented to by the grantee, and he shall have done something equivalent to an actual acceptance of it; and, moreover, the act of delivery and acceptance must, from the nature of the case, be mutual

and concurrent acts. Proof of acceptance at a time subsequent to that of the act of delivery, would not be sufficient to give validity to the deed, unless the act of delivery be a continuing one in its nature, such as leaving a deed on deposit, to be accepted by the grantee, at his election." "If the recording of the deed is intended as a delivery, and it is known to the grantee, and he assents to the same, it will take effect from the time he so assents." Vol. 2, 580, 581.

*Thulic* v. *Scovil*, 4 Gilm., 177, cited in a note to the above text, and truly said to be a very well considered and ably reasoned case, lays down these rules: "In cases of delivery to a stranger, without authority from the grantee to accept, the acceptance of the grantee at the time of delivery will be presumed under the following concurring circumstances: 1. That the deed be upon its face beneficial to the grantee. 2. That the grantor part entirely with all control over the deed. 3. That the grantor (except in cases of an escrow), accompany delivery by a declaration, intention or intimation, that the deed is delivered for and on behalf and to the use of the grantee. 4. That the grantee has eventually accepted the deed and claimed under it."

In the text of Greenleaf's Cruise, vol. 4, p. 12, it is said, that "*All deeds*, whether deriving their effect from the common law or the statute of uses, *except a feoffment*, do, *immediately* upon their execution by the grantors, *divest the estate* out of them, and put it in the party to whom the conveyance is made, though in his absence, and without his knowledge, till some disagreement to such estate appears. This doctrine is *founded on the principle*, that the *assent of the party* who takes is *implied* in all conveyances." In a note, however, it is shown, as we think, most clearly, that this proposition is stated too broadly. The most that can be claimed certainly is, that if the conveyance is absolute and unconditional, or, if not thus absolute, still appears upon its face to be beneficial to the grantee, his acceptance

· may be inferred. Until the fact that the conveyance is for the interest of the grantee is established, then, either by the instrument itself, or other proof, his acceptance will not be presumed. (And, therefore, it is not correct to say, in all cases, that the deed immediately divests the estate out of the grantor and casts it upon the grantee, in his absence and without his knowledge. ) This cannot be done against his will, nor without his consent. )

But we have unintentionally been led into the discussion of the more general question, rather than the particular one involved in the case before us. ( That question, as applied to the facts found by the referees is, whether the delivery to the recorder by the grantor was a delivery to the grantee, so as to cut off or displace the intervening rights of the attachment creditor./ And again we remark generally, that the delivery of a deed is essential to its validity, though the parties may have complied with all other requisites. In what constitutes a delivery, courts are not uniform in their definition. When the transaction is directly between the parties to it, there is ordinarily but little trouble in determining whether there has been a valid delivery. Doubt and uncertainty more frequently arises, in the application of the leading and well-settled rules, where the delivery is through the agency of a third person. But (as before intimated, we have been unable to find a case which treats a delivery to a third person, unknown to the grantee, sufficient to pass the title, unless it was intended by the grantor to be for the benefit and use of the grantee. In other words, a mere deposit of the instrument with such third person, by the maker, is no delivery to the grantee, unless made for the grantee, the holder being treated as his trustee. And especially is this true, if, after a mere deposit, and before the assent and acceptance, the property conveyed shall be attached or levied upon by a creditor of the grantor.)

It may be proper to refer to a few of the cases and some general principles applicable to this view of the controversy. In *Harrison et al.* v. *Trustees of Phillips Academy*, 12 Mass., 456, PARKER, Ch. J., says: "It is very certain that until the deed was accepted by Harrison, the title to the estate had not passed out of Holden, and that his creditors might have assailed the transaction by causing the estate to be attached. For no man can make another his grantee without his consent, and a deed made to a man with all requisite formalities, and even entered on the public registry, would be null if not afterwards accepted by the grantee. But if the grantee afterwards assent to the conveyance, it will be good to pass the title to him; unless some other circumstances shall be shown to render it invalid." And one of those circumstances we clearly think is an intervening levy or attachment.

In the note, p. 12, 4 Greenl. Cruise, the author says: "that where the delivery is made to another person, as the agent, and for the use of the grantee, his subsequent ratification may relate back to the time of delivery. Yet until that time it is only an inchoate transfer, vesting the estate in him possessionally and *sub modo*, but liable to be defeated by the intervening rights of creditors of the grantor." And in note 1, p. 13: "If a deed is made to one ignorant of the fact, and is deposited with a third person for his use, though his subsequent assent may relate back, and render the conveyance absolute, *ab initio*, as between the parties, yet it will not operate to displace and defeat intervening rights, such for example as the right of an attaching creditor."

In relation to the cases of *Thompson* v. *Leach*, 2 Ventr., 198, and *Reed* v. *Robinson*, 6 W. & Serg., 329, generally cited to sustain the proposition that a deed delivered to a third person for the use of the grantee, vests the estate in him before he has any notice that a conveyance was made

or intended, we remark that in the first case, seven of the twelve judges were of the opinion that there was no surrender of the life estate by the deed to Sir Simeon Leach, until it was accepted, which was not until some five years after the birth of the son Charles, (the deed being made upon his birth), and in the House of Lords but two judges were of a contrary opinion, though the case was in fact there reversed, and a second ejectment afterwards brought. In giving a statement of this case the American editor, (Cruise, 4, p. 14), says : ("If, therefore, the question were general whether the title to an estate passed to the grantee upon the execution of a deed, and without his knowledge, it is not improbable that among American jurists, the opinion of the majority of the judges in *Thompson* v. *Leach*, would be held as the better opinion.") In *Reed* v. *Robinson*, there was a general assignment to a trustee for the benefit of creditors. When the trustee learned the fact, he refused to have anything to do with it. It was held, however, that though the title passed to the trustee in trust, upon the delivery of the deed to a third person for the declared purpose, on his refusal it revested in the assignor; that the trust took effect, however, and that under the statute it was the duty of the Court to appoint a trustee to execute the same. But here most clearly the statute directed the course to be pursued, when the trust was expressly declared by the debtor. The trust would not be allowed to fail though it might "be renounced by the trustee or he should refuse to accept it."

In *Hatch* v. *Hatch*, 9 Mass., 307, and *Foster* v. *Mansfield*, 3 Met., 412, there was no intervening attachment, the question being, whether as against the heirs claiming the estate, a deed made by the ancestor to another heir and left with the scrivener to be retained by him until the grantor's death, and then to be delivered to the grantee, and actually thus delivered, would be valid. The case of *Doe* v. *Knight*,

5 Barn. & Cres., 671, enunciates the same rule, applying it to a mortgage made and delivered to a third person for the benefit of the creditor; which was sustained upon the ground that the mortgagor parted with the instrument for the benefit of the creditor, and in order that it should be delivered to him.

In *Hedge* v. *Drew*, 12 Pick., 141, it was held, that the delivery of the deed by the grantor for the use of the grantee, and her assent to the same before the attachment, was equivalent to an actual delivery to the grantee, personally. But the whole argument shows, that the holding would have been otherwise if the attachment had been before the assent or acceptance of the grantee.   And see *Jackson* v. *Phipps*, 12 John., 418, which is also pertinent from the fact that there the deed, under which defendant claimed, and which was held invalid, for want of delivery, was made pursuant to an agreement previously entered into between the grantor and grantee, the agreement having reference to the particular farm afterwards conveyed.   See, also, *Woodman* v. *Coolbroth*, 7 Greenl., 181.   In *Lamson* v. *Thornton*, 3 Met., 275, there was a prior agreement, that the land should be conveyed in satisfaction of the note sued upon by plaintiff.   The deed was made and sent by the grantor to the county registry.   This was in 1833, when the grantee was absent on a voyage, from which he did not return until 1836.   The land was attached as the property of the grantor in 1835, before the return of the grantee, and before he had otherwise accepted the conveyance.   It was held, as against the attaching creditor, there was no valid delivery, and that the title did not pass.   And see *Maynard* v. *Same*, 10 Mass., 455.

The reasoning and authorities cited in *Church* v. *Gilman*, 15 Wend., 655, teach, among other things, if we under- -stand the case correctly, that a deed may be delivered to a stranger for and in the behalf, and to the use of him to

whom it is made, without authority, but if it be delivered to a stranger without any such declaration, intention or intimation, unless it be a case where it is delivered as an escrow, there is no sufficient delivery. And that this view is correct, see 2 Washburne Real Property, 582, where, citing this with other authorities, it is said that, "When a deed is delivered to the grantee named, the law presumes that it was done with an intent, on the part of the grantor, to make it his effectual deed. But if it is delivered to a stranger, and nothing is said at the time, no such inference is drawn from the act of delivery." If this be the true construction of that case, the syllabus is calculated to mislead and does, indeed, misstate the law. In the case before us, there is no pretense from the proof, other than by implication, that Day, the grantor, delivered the bill of sale to the recorder, "for, and in behalf, and for and to the use of the grantee." *Powers* v. *Russell*, 13 Pick., 69. Nor was the delivery to the recorder, as the trustee or agent of the grantee, to be held for a certain time, or to be delivered upon the happening of a certain event. The case of *Wheelwright* v. *Same*, 2 Mass., 447; *Belden* v. *Carter*, 4 Day, 66, and others of that class, are not, therefore, pertinent to the present inquiry.

In *Verplanck* v. *Sterry*, 12 John., 535, the ruling is clearly correct, upon the ground that the deed, though not delivered to the trustees named, was to the beneficiary. And the case of *Law's Executor* v. *Bury*, 3 Dyer, 167, there cited, if good law at this time, was not wanted to sustain the conveyance made for the benefit of the daughter, Louisa Ann Arden.

In *Denton* v. *Perry*, 5 Verm., 382, it is held, that if the grantee has not accepted the deed before the attachment by the creditor, the creditor obtains precedence, though the deed has been recorded. And that case has an analogy to

this, from the fact that the creditor, before attaching, made inquiry as to the title.

We conclude, therefore, that the Court below correctly confirmed the report of the majority of the referees and the judgment is

Affirmed.