MARSHALL FIELD ET AL. V. DAVID FISHER, ASSIGNEE, ETC., ET AL.

*Assignment for benefit of creditors—Security for bona fide indebtedness—Delivery of chattel mortgage by filing with clerk—Acceptance by mortgagee.*

1. It must be considered as the settled law of this State, under the assignment statute as it now stands, that a creditor having no knowledge of the contemplated assignment of his debtor has a legal right to receive payment of or security for his just claim against such debtor. *Root v. Potter*, 59 Mich. 498; *Root v. Harl*, 62 Id. 420; *Sweetzer v. Higby*, 63 Id. 13.

2. The execution of a chattel mortgage as payment, or to secure the payment, of a *bona fide* indebtedness to the mortgagee, and its filing by the mortgagor, or by his attorney at his request, operates as a delivery to the mortgagee, who takes the mortgage subject to the rights of third persons arising *prior* to its *acceptance* by the mortgagee, he being ignorant of such execution and filing until notified thereof.

Appeal from Kalamazoo. (Mills, J.) Argued April 7, 1887. Decided April 28, 1887.

Bill filed by creditors of assignor to set aside mortgages, etc. Complainants appeal from decree dismissing bill. Decree affirmed, mortgages being held valid.

*Mechem, Hulbert & Mechem* (*N. W. Bliss*, of counsel), for complainants.

*Howard & Roos* and *J. W. Osborn*, for defendants First National Bank and Adelia Haley.

*Dallas Boudeman*, for defendants Fisher, Clark, and Cooper.

Morse, J. On the thirteenth of May, 1886, Charles S. Clark, a sole trader in dry goods, notions, etc., at Kalamazoo, under the name of L. L. Clark & Co., executed four chattel mortgages upon all his stock in trade,—one to Sarah J. Clark, his mother, for $5,212.66; one to Joel P. Cooper, who resided in Oshtemo, Kalamazoo county, for $1,652.44; one to the First National Bank of Kalamazoo for $2,800; and one to Adelia Haley for $400. All these mortgages were filed in the clerk's office the same day, in the afternoon. The next day Clark made an assignment for the benefit of creditors, naming Fisher as assignee, who accepted the trust and entered upon the discharge of his duties.

The complainants are creditors of Clark to the amount of $969.97 for merchandise sold to him under the name of L. L. Clark & Co. between January 18 and May 10, 1886.

They filed the bill in this cause, June 7, 1886, in behalf of themselves and all other creditors of said Clark who might thereafter become parties complainant to the suit.

The material allegations, after showing their standing as creditors and the assignment to Fisher, are that on June 2, 1886, they filed their claim, with proof thereof, in the office of the county clerk of Kalamazoo county.

That the four mortgages were made and filed as heretofore stated; that the mortgage to Mrs. Clark was given priority over the others, which stood upon an equality between themselves; that Clark had been for a long time insolvent, and unable to pay his debts, and, being hard pressed by his creditors, determined to make an assignment, and executed these

mortgages in view of such assignment, with the intent and purpose of preferring his friends and relatives, in fraud of such assignment and his other creditors.

That prior to January 1, 1885, Charles S. Clark and his father, Lucius L. Clark, were associated together in this same business under the name of L. L. Clark & Co. In December, 1884, L. L. Clark died. The firm was dissolved by this death, and at the time was insolvent, as Charles S. Clark well knew. The assets of said firm inventoried about $25,000, and its indebtedness about $19,000, leaving a nominal surplus of about $6,000. When the estate of Lucius L. Clark was appraised, his half of the business was called $3,000, but in fact it was worth nothing.

That the indebtedness of Charles S. Clark to his mother was made up of this $3,000, and $2,000 loaned by her to him, and, further, that really the firm of L. L. Clark & Co. were in debt $6,000 above their assets at the date of the death of said L. L. Clark, one-half of which Sarah J. Clark was bound in equity to pay; that the indebtedness to the other mortgagees, and secured by their respective mortgages, was the old indebtedness of L. L. Clark & Co.

Complainants also allege that each of these mortgagees, at the time of the execution and delivery of the instruments, was cognizant of the fact that Charles S. Clark was insolvent, and was about to make an assignment for the benefit of his creditors, and that each of them accepted their several mortgages with such knowledge, and with intent to obtain thereby a preferment of their respective claims against such assignment and against the other creditors, and that, by reason of said premises, such mortgages are invalid.

That, in the schedule of liabilities filed under such assignment, two claims, to wit, one of Morse, Wilson & Co. for $5,083.29, and one of Dunham, Buckley & Co. for $1,097.61, have been repudiated by such parties as contracts, and the goods that were the alleged consideration of the same have

been replevied; and the claims of F. J. Haley for $600, and Miles Chubb for $8,000, are the old indebtedness of the dissolved firm of L. L. Clark & Co., and not provable against the estate of Charles S. Clark, sole trader, as aforesaid, except as they are proved to be paid after the payment in full of the debts of said Clark as such sole trader.

That the complainants, June 2, 1886, in writing, requested the said assignee, David Fisher, to contest the validity of the four mortgages aforesaid, as well as the said debts to said F. J. Haley, Miles Chubb, Morse, Wilson & Co., and Dunham, Buckley & Co., which said request was refused by the said Fisher.

The bill prays that the said chattel mortgages may be declared void, and that the claims secured thereby, and also the claims of the other parties heretofore mentioned, be decreed to be not proper charges against the property of Charles S. Clark, insolvent, and that David Fisher, the assignee, be ordered forthwith to contest the validity of said mortgages and the claims of said other parties, and that, in case of his refusal to do so, he be removed as such assignee, and a receiver be appointed in his stead.

Sarah J. Clark, in her answer, denies any knowledge on her part that Charles S. Clark was insolvent or contemplated any assignment at the time she received her mortgage, or that the mortgage was given to or received by her as a preference contrary to the statute, or with any intent to hinder, delay, or defraud creditors. She alleges that the chattel mortgage was made to her to secure a *bona fide* indebtedness, and was actually and in good faith owing to her; that L. L. Clark & Co., at her husband's death, were solvent, and the inventory and appraisal showed her, as the sole legatee of said Lucius L. Clark, to be entitled to $3,000 from said copartnership; that Charles S. Clark purchased her interest, as such legatee, in the business, and that, in consideration of such sale to him by her, he agreed to assume and pay all the outstanding

liabilities of said firm of L L. Clark &ʻ Co.; and that the consideration of her mortgage was $3,081.97 owing upon said purchase, and $2,000 of her own money loaned to him.　She denies all fraud, and denies that her mortgage is in any sense invalid or void.

She further claims that she is a secured creditor of said Charles S. Clark for the full amount of her mortgage debt and interest, and has a lien upon the goods, or the money received from the sale of the same, and asks the benefit of a cross-bill, and a decree in her favor that the moneys received by the assignee from a sale of the goods be paid over to her upon said chattel mortgage indebtedness until her claim is satisfied.

All the other defendants deny in their answers any knowledge of the insolvency of said Charles S. Clark, or that he contemplated any assignment, at the time of the making of their respective mortgages, and allege that the mortgages to each of them were executed for a valid and subsisting indebtedness of Charles S. Clark to them.

The circuit court for the county of Kalamazoo, in chancery, entered a decree dismissing the bill of complainants, with costs, and the cross-bills of defendants, contained in their answers, without costs.　It was also ordered in the decree that the complainants, or other creditors of Charles S. C ark, be permitted, if they so desired, to contest any of the chattel mortgages, and to use the name of the assignee for that purpose, upon giving security.

The assignee was directed to withhold the payment of any moneys upon said mortgages for 20 days, or until the appeal to the Supreme Court should be decided, if such appeal was taken.

The complainants appeal.

It appears from the proofs in the case that none of the parties holding these mortgages knew, at the time they were executed, that Clark was insolvent, or contemplated an assign-

ment.   Nor is there any evidence that Clark, at the time he made the mortgages, had in view an assignment.   He testifies, and his evidence is not disputed, that the assignment was an after-thought, and brought about under the advice of his attorney, because of the importunities and threats of the agent of Morse, Wilson & Co., on the fourteenth of May, 1886, said agent requiring a chattel mortgage to his firm, and in default thereof threatening proceedings by attachment.   It also appears beyond controversy that the debts secured by the chattel mortgages were *bona fide,* to the full amount named in the respective instruments by which they were secured.   This being the case, the decree of the court below was correct in dismissing complainants' bill, and in accord with the previous decisions of this Court.   *Root v. Potter,* 59 Mich. 498; *Root v. Harl,* 62 Id. 420; *Sweetzer v. Higby,* 63 Id. 13.   We do not consider it necessary to restate the grounds upon which these decisions were based and justified.

It must be considered as the settled law of this State, under the assignment statute as it now stands, that a creditor having no knowledge of the contemplated assignment of his debtor has a legal right to accept payment of or security for his just claim against such debtor.   The reasons for this holding have been amply stated in the cases above referred to, and the principle has been announced heretofore in a number of cases, some of which are cited and noted in *Sweetzer v. Higby.*

It is argued, however, that the debts to Joel P. Cooper and Adelia Haley were not the debts of Charles S. Clark, made by him as a sole trader under the name of L. L. Clark & Co., but those of the old firm of L. L. Clark & Co., having their origin and existence, save interest, before the death of Lucius L. Clark; that $3,000 of the debt of Sarah J. Clark is not valid, because in fact the firm of L. L. Clark & Co. was insolvent at the death of the elder Clark, and in

reality nothing was coming or belonging to his widow, as sole legatee of his estate, out of this business; that there was therefore no consideration for the note of $3,000 given by Charles to her. It is also claimed that at least $1,000 of the indebtedness to the bank was the debt of the old firm.

The facts as shown by the proofs are these: Upon the death of Lucius L. Clark an inventory and appraisal was made of the assets of the firm, and the liabilities deducted therefrom. Charles S. Clark and Sarah J. Clark in perfect good faith supposed that there was $6,000 over and above all liabilities belonging to said firm, one-half of which belonged to the widow. Thereupon an arrangement was made between Charles S. Clark and his mother. He agreed to assume and pay all the firm debts, and also to pay her for her share of the surplus in the business, and, in pursuance of such understanding and agreement, on the third day of January, 1885, he gave to her his individual note for the sum of $3,081.97. He also saw the other mortgagees in this suit at different times, and became personally responsible to them for the indebtedness of L. L. Clark & Co. to them, and each of them accepted his obligation, and none of their claims were proven or pressed against the estate of Lucius L. Clark, deceased. These debts were therefore the valid and legal obligations of Charles S. Clark to the respective parties, and he had the right to secure them.

These mortgages were all accepted by the parties upon the day they were executed, excepting the one to Joel P. Cooper. Cooper did not live in Kalamazoo. The mortgage to him was delivered by Charles S. Clark to his attorney, Dallas Boudeman, who placed the same on record, and notified Cooper by mail of the fact of the execution and filing of the same that day. It does not appear whether Cooper received the letter before or after the assignment.

It makes no material difference, under the circumstances of this case, in our estimation, whether Boudeman, in filing

this mortgage, was acting as the agent of Clark or Cooper. The execution of the mortgage by Clark, in payment, or security for the payment, of a *bona fide* indebtedness to Cooper, and its filing for record, was, between Clark and Cooper, a sufficient delivery. If Clark, instead of filing it himself, delivered it to a third person to be filed, and such person filed it, it would also be a good delivery between the parties to the instrument. But the authorities are that, if the rights of other parties intervene between the filing of such instrument and its acceptance by the mortgagee, the filing of the mortgage is not a sufficient delivery as against such parties. It has been held that a creditor who attached the property mortgaged before the mortgagee had accepted the security would have a prior lien upon the goods. *Day v. Griffith,* 15 Iowa, 104; Jones, Chat. Mortg. §§ 106-108; *Welch v. Sackett,* 12 Wis. 243.

In the case at bar it appears that Clark had previously agreed to secure Cooper, but the precise form of the security had not been agreed upon. Cooper, as soon as he learned of the execution and filing of the mortgage, ratified the transaction, and such ratification would, in the absence of intervening rights, relate back to the filing of the mortgage. The assignment made by Clark to Fisher was subject to this mortgage, and the assignee had notice of its existence and filing. The assignee, under the circumstances, we think, took the property subject to the lien of this mortgage; it being executed in good faith, and subsequently accepted by Cooper. The assignee accepted the assignment with this lien upon the property, and none of the creditors moved to set it aside until Cooper had accepted it. It cannot be said that their rights to this property had intervened in the sense recognized by the authorities above referred to.

It is apparent that the mortgages were executed in good faith to secure honest and valid debts, and the securities were

accepted by the defendants without knowledge of the insolvency of Clark, or that he intended to make an assignment.

The decree of the court below dismissing complainants' bill is therefore affirmed, with costs.

The other Justices concurred.