KUH et al., Appellants, v. GARVIN; ALLEN & ALLEN et al., Interpleaders.

Division Two, December 18, 1894.

1. **Fraudulent Chattel Mortgage**: RESERVATION FOR GRANTOR'S BENEFIT: STATUTE. A mortgage given on a stock of merchandise to secure the payment of the grantor's indebtedness, and which provides that the latter is to remain in possession of the property and sell it in the ordinary and usual course of business for his own benefit is void as a matter of law as against the grantor's creditors. (R. S. 1889, sec. 5169.)

2. ———: ———: ———: POSSESSION. Such invalidity may, however, be cured by the mortgagee's taking open and public possession of the mortgaged property before the attachment of the liens of the other creditors.

3. ———: ———: ———: ———. The fact that a mortgagee who was the agent and clerk of an insolvent mortgagor, in conducting his business suffered the mortgagor to remain in possession of the mortgaged merchandise for a day after the making of the mortgage and that the mortgagor, with the mortgagee's consent, withdrew from a bank the remainder due the former, does not per se vitiate the mortgage.

4. **Chattel Mortgage, Recording of**: NONRESIDENT GRANTOR: ACCEPTANCE: CREDITORS. Although a chattel mortgage executed by a nonresident mortgagor be not entitled to record, yet, where he delivers the mortgage to the recorder of deeds and the mortgagee takes possession of the property, thereby indicating his acceptance of the mortgage, the delivery is sufficient to render the mortgage valid against creditors of the mortgagor.

Kuh v. Garvin.

5. ———: ———: ———: ———. The fact that the mortgagor, when he delivered the mortgage to the recorder, instructed the latter to return it to him when recorded, does not affect the sufficiency of the delivery, on the mortgagee's subsequently assenting thereto, as against creditors of the mortgagor.

6. ———: ACCEPTANCE: CREDITORS. Where a mortgagee states to one who has taken possession of the mortgaged property as his agent that he approves what he has done, the acceptance is sufficient as against creditors of the mortgagor attaching the property after such approval.

7. ———: ———: ATTACHING CREDITORS. Evidence that a mortgagee, on being informed by the mortgagor that he had made an assignment for the benefit of creditors, sent certain notes against the mortgagor to a third person for collection without any evidence as to when the latter received them, does not show a ratification of such third person's act in taking possession of the property as agent of the mortgagee, so as to constitute an acceptance of the mortgage as against attaching creditors of the mortgagor.

8. ———: ———: ———. The presumed acceptance of a mortgage by the mortgagee because it is beneficial to him will not defeat the attachment lien of a creditor of the mortgagor attaching before ratification of such mortgage by the mortgagee.

9. Practice: RULES OF COURT. The enforcement of its rules rests largely in the discretion of the trial court.

10. ———: AMENDMENT: CONTINUANCE. The neglect of a party to move for a continuance, when an amendment to a pleading is permitted, waives an objection that such allowance worked a surprise on him.

11. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. A motion for a new trial on the ground of newly discovered evidence should not be sustained where it appears such evidence could not produce a different result.

*Appeal from Lawrence Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*H. H. Bloss* and *Heffernan & Buckley* for appellants.

(1) A mortgage given on a stock of merchandise, providing that mortgagor is to remain in possession

and sell mortgaged goods in ordinary course of retail trade, is void as to creditors, and the stigma is attached to it if the evidence adduced shows mortgagor is to sell. *Bigelow v. Stringer*, 40 Mo. 195; *Allen v. Berry*, 40 Mo. 282; *Johnson v. McAllister*, 30 Mo. 327; *Ziegler v. Maddox*, 26 Mo. 575; *Stanley v. Bunce*, 27 Mo. 269; *Potter v. McDowell*, 31 Mo. 62; *State to use v. Holliday*, 37 Mo. 500; *White v. Graves*, 68 Mo. 218; *Bullene v. Barrett*, 87 Mo. 185; *Moser v. Cloes*, 23 Mo. App. 420. (2) The taking possession of the goods mortgaged cures the vice above suggested, but the possession must be: *First*, authorized by the mortgagor; *second*, actual, open and notorious, and, *third*, the mortgage and dealings between mortgagor and mortgagee must be *bona fide* and free from fraud. As to first point see Herman on Chattel Mortgages, p. 217; *Barrett v. Timberlake*, 57 Mo. 499; *Shubble v. Courdt*, 56 Mo. 437; *Simpson v. Keane*, 39 Mo. App. 645; *Chandler v. West*, 37 Mo. App. 631. As to second see *Moser v. Cloes*, 23 Mo. App. 420. As to third see *Stone v. Spencer*, 77 Mo. 356. And the fraud under the statute is according to its legal effect and not intent. Interpleader Smith's conduct in taking a mortgage, allowing defendant to remain in possession and turning over to him $300 in cash, taking it out of the bank and leaving with it for Kansas, thus removing it from reach of creditors, was such fraud as vitiates his mortgage. *Douglas v. Cissna*, 17 Mo. App. 44. The mortgages must be delivered as well as executed before the levy of attachment by plaintiffs. The delivery is birth of the mortgage. Martindale on Conveyances, secs. 204 and 209, and authorities cited. (3) Interpleas are authorized by sections 572, 573 and 579, Revised Statutes, 1889. There is no procedure provided for by statute, hence it is competent for courts to establish rules of practice regarding them. When such rules are established

courts and litigants are bound by them the same as statutory provisions. Repalje and Lawrence's Law Dictionary, title, Rule of Court; *Doan v. Holly*, 29 Mo. 256; *Maloney v. Hunt*, 29 Mo. App. 379; *Bransteth v. Rives*, 34 Mo. 318; *Tucker v. St. Louis*, 63 Mo. 595; *Showles v. Freeman*, 81 Mo. 540. (4) From the newly discovered evidence that interpleader Needles was not in Springfield until the day after plaintiff's attachment, new trial should have been granted as to him and Washington County Bank; for until they did accept, and a mortgage delivered by grantor to recorder for record does not take effect until acceptance, so far as third parties are concerned, an intervening lienor or attaching creditor will take precedence over it. This was conceded by the trial court, but it strangely forgot to apply it to the evidence, and especially in passing on this newly discovered evidence. *Peace v. Danforth*, 13 Mo. 960; *Majors v. Hill*, 13 Mo. 247; *Carter v. Mills*, 30 Mo. 432; *Bank v. Morse*, 73 Iowa, 174; *Day v. Griffith*, 15 Iowa, 104; *Bell v. Bank*, 11 Bush (Ky.), 34; *Thompson's Heirs v. Jackson*, 10 Bush (Ky.), 424; *Woodbur v. Fisher*, 20 Ind. 387; *Goodsell v. Stinson*, 7 Blackf. 437; *Cobb v. Chose*, 54 Iowa, 196; *McPherson v. Featherstone*, 37 Wis. 642; *Jackson v. Phipps*, 11 Johns. 418; *Huey v. Huey*, 65 Mo. 692; Herman on Chattel Mortgages, p. 135; Devlin on Deeds, sec. 291. (5) Mrs. Garvin's mortgage is void. The common law, in the absence of proof to the contrary, is presumed to prevail in Illinois, and at common law personal property owned by the wife at time of or coming to her after marriage, belongs to the husband. *Woolford v. Stephen*, 51 Mo. 443; *Alexander v. Lydick*, 80 Mo. 341; *Benne v. Schnecko*, 100 Mo. 250; *Meyer v. McCabe*, 73 Mo. 236; *Hoffheimer v. Lasen*, 24 Mo. App. 652; *Kerwin v. Doran*, 29 Mo. App. 405; *Conrad v. Fisher*, 37 Mo. App. 371. Nor could the subsequent removal

into Kansas, a code state, change the title. *Myer v. McCabe*, 77 Mo. 236. (6) It will not do to say that in Kansas wife can hold property, also in Missouri, and by mortgaging to interpleader C. J. Garvin, the defendant evidenced an intention to let his wife have or repossess herself of the property acquired in right of his wife, for a husband can not, without a sufficient consideration, transfer to his wife property acquired from her by right of marriage so as to defeat claims of creditors. *Potter v. McDowell*, 31 Mo. 72.

*Vaughan & Cox* for interpleaders, respondents.

(1) A husband may waive his right to his wife's personal property and permit her to retain the same free from any claim on his part, and if money, may borrow the same of her and secure the payment to her in the same way as the debt of any other creditor. *Coughlin v. Ryan*, 43 Mo. 99; *Hotlhaus v. Hornbostle*, 60 Mo. 439; *Bangert v. Bangert*, 13 Mo. App. 144; *Tootle v. Caldwell*, 30 Kansas, 125. (2) This doctrine exists by virtue of the common law, which appellants rightly say was in force in Illinois by presumption at least at the time Mr. and Mrs. Garvin lived there and this is doubly true in states like Missouri and Kansas, which by statute have created the married woman's separate estate. *Hart v. Leete*, 104 Mo. 329; *Botts v. Gooch*, 97 Mo. 88; *Welch v. Welch*, 63 Mo. 57; *Clark v. Clark*, 86 Mo. 116; *McCoy v. Hyatt*, 80 Mo. 130; *Cooper v. Standley*, 40 Mo. App. 138; *Gilliland v. Gilliland*, 96 Mo. 522; *White v. Crosby*, 101 Mo. 162. (3) No evidence having been offered as to the law of Illinois or Kansas, the common law is presumed to prevail in Illinois, and the law of Kansas to be the same as that of Missouri. *Bain v. Arnold*, 33 Mo. App. 633; *White v. Chaney*, 20 Mo. App. 389; *Hoff-*

*heimer v. Losen*, 34 Mo. App. 652. (4) The delivery of the mortgages to the recorder of deeds of Lawrence county was a delivery to the mortgagees, and this is true without regard to the validity of such delivery as notice. Delivery is a question of intent, and this was evidenced by his leaving the mortgages with the' recorder although he may have been mistaken as to the legal effect of it. *Major v. Hill*, 13 Mo. 248; *Pearce v. Danforth*, 13 Mo. 360; *Lumber Co. v. Anderson*, 13 Mo. App. 434; *Masterson v. Cheek*, 23 Ill. 76; *Fain v. Smith*, 58 Am. Rep. (Ore.) 288; *Bryars v. Spencer*, 40 Am. Rep. 215. (5) It is the law of this state that where a conveyance is delivered to the recorder of deeds for the purpose of having the same recorded, it is a delivery to the grantee. In all such cases an assent and acceptance by the grantee is presumed where the instrument is on its face beneficial to the grantee until an actual dissent is shown. *Major v. Hill*, 13 Mo. 248; *Pearce v. Danforth*, 13 Mo. 360; *Lumber Co. v. Anderson*, 13 Mo. App. 434; *Ensworth v. King*, 50 Mo. 482; *Rogers v. Cary*, 47 Mo. 235; *Burke v. Adams*, 80 Mo. 504; *Hall v. Hall*, 107 Mo. 101; *Merrills v. Swift*, 18 Conn. 257; *Lady Superior v. McNamara*, 3 Barbour's Chan. 375; *Scrugham v. Wood*, 15 Wend. 545; *Young v. Gibeau*, 3 Wall. 636; *Tompkins v. Wheeler*, 16 Peters, 119; *Lessee of Mitchell v. Ryan*, 3 Ohio St. 377; *Standiford v. Standiford*, 97 Mo. 239. (6) "The rule that the grantor must part with all dominion and control over the deed, does not mean that he must put it out of his physical power to procure possession of it." If the deed is delivered to a third person without reservation and with the intention that it shall take effect and from that time operate as a transfer it is sufficient. *Sneathen v. Sneathen*, 104 Mo. 210. (7) Not only were the mortgages delivered to the recorder, but there was an actual acceptance of the

same by two of the mortgagees and the goods were taken into possession by Mr. Cox, for the benefit of all of the mortgagees. *Hannah v. Swarner*, 8 Watts, 9; *Pearce v. Danforth*, 13 Mo. 360. (8) This doctrine of delivery and presumed acceptance applies as above stated, although attachments or other liens may intervene before actual knowledge and acceptance by the grantee. *Majors v. Hill, supra; Pearce v. Danforth, supra; Ensworth v. King, supra*. (9) By "beneficial in effect," is meant that the deed or mortgage upon its face is beneficial to the grantee. 1 Devlin on Deeds, sec. 289; *Hulick v. Scovil*, 4 Gilm. 159–176. (10) It is not necessary that evidence should be offered to show affirmatively by the party asserting the delivery that the deed in fact was beneficial. (11) "It is a familiar rule, that whatever is done for the benefit of a party is presumed to be done by his authority or to have been immediately adopted." *Thorne v. San Francisco*, 4 Cal. 170; Lawson on Presumptive Evidence, 303; *Long v. Co.*, 68 Mo. 432. (12) The judgment that interpleaders recover the proceeds of the sale was proper. *Nolan v. Deutsch*, 23 Mo. App. 1.

BURGESS, J.—On September 2, 1891, and prior thereto, the defendant Garvin, who was a resident of the state of Kansas, owned and was in possession of a large stock of merchandise at Aurora, Lawrence county, Missouri. The business was under the control of Ollie Garvin, defendant's son, who, with J. A. Powell and Frank Smith as clerks, conducted the business.

On that day the defendant, being heavily in debt and insolvent, without informing any of the interpleaders, to whom he was indebted, of his intention so to do, went to Springfield, Missouri, and executed mortgages upon his stock of goods to each one of them

for the amount of his indebtedness to them. The mortgages taken in the chronological order in which they were executed and had priority, were as follows: Allen & Allen, bankers; Bank of Aurora; Frank Smith; C. J. Garvin; Ada E. Garvin; J. A. Powell; T. B. Needles; and Washington County Bank; Kuh, Nathan & Fisher. On the day next after their execution they were sent by the mortgagor by his son to the recorder's office at Mt. Vernon in Lawrence county, to be recorded, then to be returned to defendant at Aurora.

On September 7, 1891, the plaintiffs caused the stock of merchandise to be seized as the property of defendant Garvin under a writ of attachment which they had sued out against him before the clerk of the circuit court of said county, and on the fifteenth day of September next thereafter, the judge of said court made an order for the sale of the attached property, which was accordingly sold by the sheriff, and from the sale there was realized the sum of $5,426.85. At the time of the seizure of the stock of merchandise by the sheriff, it was in the possession of Mr. Davis, representing the Bank of Aurora, Frank Smith and J. A. Powell, representing themselves, and C. A. Cox acting for Allen & Allen, and claiming to act for all other mortgagees. They had closed the store, had put notices on the front door of the storehouse notifying all persons that the stock of goods was in possession of the mortgagees, and had taken down Garvin's sign.

On November 12, 1891, in vacation of court, Allen & Allen, Frank Smith, C. J. Garvin and J. A. Powell, filed their interplea, in the usual form, claiming the goods under their mortgages, according to their priority, and asking for the return thereof. They also alleged in their interplea, "That on September 4, 1891, they, by virtue of their respective mortgages, and

the mortgage of said bank and one Needles, took absolute and exclusive possession of all the mortgaged property, and took control and possession of said store and stock of merchandise to the exclusion of the defendant, James Garvin, and the said James Garvin having made default in the payment of the mortgages of said interpleaders and of said bank and of said Needles, turned over all of said property embodied in said mortgages to said interpleaders in payment of their said mortgages, and said interpleaders and said bank and said Needles then became the owners of said property and entitled to the possession of the same. That, afterwards, to wit, on or about the eleventh day of September, 1891, the plaintiffs herein sued out a writ of attachment, and procured and caused the sheriff. of Lawrence county, Missouri, to attach all of said property and levy on the same, who took the said property away from the said interpleaders, and out of their possession, and plaintiffs have wrongfully and unlawfully converted the same to their own use, and refuse to deliver said property to said interpleaders, and said interpleaders say that the taking of said property was unlawful, that they are entitled to the possession of the same, and for a judgment for a return thereof, if a judgment for the return can be had, if not, for its value, $9,000."

On February 16, 1892, during the sitting of the circuit court of said county, plaintiffs made reply to said interplea, denying each and all the allegations therein, alleging that the property had been sold by the sheriff under the writs of attachment, that he holds the proceeds of the sale in his hands subject to the order of the court, and further averring that said mortgages were for the purpose of hindering, delaying and defrauding the creditors of defendant Garvin; that C. J. Garvin, one of the interpleaders, is the wife

of the defendant and was at the institution of this suit; that the mortgages were without consideration, and that there was nothing due from the mortgagor to the mortgagees at any time.

On the same day, February 16, Thomas B. Needles and Washington County Bank, a firm composed of Thomas B. Needles, Margaret Sewell and Louis Kreghoof, also filed their interplea, in which they alleged "that jointly or in connection with the other interpleaders, to wit: Allen & Allen, Frank Smith, Ada Garvin and J. A. Powell, they were the owners of and entitled to the possession of all the property seized and levied upon in this case by the said sheriff and were in the possession of the said property prior to the day of the levy of the writ of attachment in this case; that they and the said interpleaders were then, and now are, entitled to the possession of said property, which, at the time of said seizure in this case, was of the value of $9,000; that said property consists of a certain lot of clothing situated, on the seventh day of September, 1891, in a building known as the Mercantile building on Olive street, in the city of Aurora, in Lawrence county, Missouri, and constituted a part of the stock of goods prior to this time owned by James Garvin, a particular description of which said property is contained in the said sheriff's return in this case; that on the afternoon of the seventh day of September, 1891, the sheriff unlawfully took the possession of said property from the possession of the said Needles, said bank and other interpleaders in said county, and at the beginning of this suit unlawfully withheld the same from the said Needles and said bank and the said interpleaders named, and that since the beginning of this suit the said property was sold by the said sheriff at the price and sum of $5,500, and said sum is now in the said sheriff's hands; that Mrs. C. J. Garvin likewise claims to

own or have an interest in said property by virtue of a chattel mortgage had and held by her, but that the validity and good faith of the debt and chattel mortgage of the said C. J. Garvin are disputed and denied by the plaintiff, and that this interpleader has no information or knowledge sufficient to form a belief as to whether her said mortgage is just or in good faith. Wherefore said Needles prays judgment for the recovery of said property and all his interest in the same; that the said claim of Mrs. Garvin, if found to be invalid or fraudulent, be set aside or disregarded, and that said money now in the possession of said sheriff be adjudged to said interpleaders and paid over to them as their respective interests may require and for further relief.

On the same day that the interplea last named was filed, plaintiffs filed their motion to strike the same out, because the same was not filed in time, having been filed on the same day the cause was set for trial, and no notice thereof had been filed. And in support of said motion introduced in evidence the following rule of said court, to wit:

"Rule VI.  Interpleas in all cases of garnishment and attachment shall be filed within the first two days of the term to which the writ is returnable, and shall be triable thereat, and before the issue of any plea in abatement. Notice of all interpleas shall be served by the interpleader upon all the parties to the cause or their attorneys within three days of the filing thereof, unless longer time be granted by the court. The failure to make such service shall entitle the parties opposing the interplea to an order dismissing the same.  Within three days after service of such notice any party to the cause may plead to the interplea and thereafter such proper pleadings and proceedings shall follow as in ordinary civil actions until issue is reached

which shall be tried as the court may direct. Interpleaders may be required to give security for costs of proceedings upon the interplea in like manner as plaintiffs in civil actions."

The motion to strike out the interplea of Needles and the Washington County Bank was sustained, and judgment rendered against them in favor of plaintiffs for costs.

The other interpleaders then filed their reply to the answer of plaintiffs to their interplea denying each and every allegation therein contained.

The trial resulted in a judgment in favor of the interpleaders for the property attached, and against the plaintiffs for their costs. From which plaintiffs appealed.

There can be no question but that when a mortgage given upon a stock of merchandise to secure the payment of an indebtedness provides that the mortgagor is to remain in possession and sell the mortgaged property in the ordinary and usual course of business for his own benefit, such mortgage is void as a matter of law as to the creditors of the mortgagor, under section 5169, Revised Statutes, 1889, which provides that: "Every deed of gift and conveyance of goods and chattels, in trust, to the use of the person so making such deed of gift or conveyance, is declared to be void as against creditors, existing and subsequent, and purchasers."

Such conveyance is void as against creditors, because of the fact that it is deemed in law as being for the benefit of the grantor. *Reed v. Pelletier,* 28 Mo. 173; *State to use v. D'Oench,* 31 Mo. 453; *Bullene v. Barrett,* 87 Mo. 185. And if not void upon its face it may be shown to be fraudulent and void against creditors by extrinsic evidence, showing that the mortgagor after the execution of the mortgage continued in the

possession of the merchandise and to sell in the ordinary course of retail trade by and with the consent of the mortgagee. *Reed v. Pelletier*, 28 Mo. 173; *State to use v. Tasker*, 31 Mo. 445; *Bullene v. Barrett*, 87 Mo. 185. Upon these questions, the court sitting as a jury declared the law to be as herein announced, but found that the mortgages were not fraudulent and that the mortgagor did not remain in possession of the goods after the execution of the mortgages so as to make them void against creditors.

There was evidence tending to show that sales of goods were made by the clerks of defendant after the signing and acknowledging of the mortgages, while it was also shown by Smith and Cox, the first named one of the mortgagees, and the latter an attorney for defendant and interpleaders, that the merchandise was taken possession of by Mr. Cox, on the evening of the third of September, 1891, the day after the mortgages were executed for the benefit of Allen & Allen, for whom he was attorney, and of all of the mortgagees whom he claimed to represent, before it was seized under the attachment by the sheriff. By the terms of the mortgages the mortgagor was to remain in possession of the property until condition broken, but as the debts secured by them were past due when they were executed, and the condition was that in default of payment of the debts when due the mortgagees might take possession, the condition was at once broken, and the mortgagees were entitled to the immediate possession upon the delivery of the mortgages to them. Whatever, then, may have been upon the face of the mortgages which rendered them void as to creditors, was cured by the taking possession of the goods by the interpleaders, Smith and Allen and Powell, and the open and notorious character of their possession before the levy of the attachment. Moreover, this issue was

also found for the interpleaders, as is shown by a declaration of law given by the court with respect thereto.

Nor is it true that the conduct of interpleader Smith in allowing defendant to remain in possession of the goods for so short a space of time after the date of the mortgages, and the withdrawal by defendant of an amount of money remaining to his credit in the bank at Aurora, by and with the knowledge and consent of Smith, such evidence of fraud as would *per se* vitiate the mortgage to him. The money was the property of defendant, was not included in the mortgages, and Smith had no control over the same, except as the clerk and agent of defendant; nor did Smith have control of the goods as mortgagee until after he had taken possession of them under his mortgage.

That the mortgages must have been delivered before they became effective, or had any legal force as such, is beyond controversy, but what constitutes such delivery depends very much upon the facts and circumstances attending each particular case and the intention of the mortgagor. It is not necessary that the deed should be handed over to the mortgagee, but if it be delivered to any person, or deposited with any person for him, it is sufficient.

The mortgages were executed on the second day of September, 1891, and filed for record in the recorder's office of Lawrence county, Missouri, on the following day at 11 o'clock and 50 minutes, A. M. After the mortgages had once been delivered to the interpleaders or to the recorder of deeds for them, the mere fact that defendant had ordered them, after being recorded, returned to him at Aurora did not render them invalid. Their execution in so far as he was concerned was then complete, and nothing that the mortgagor could thereafter do without the consent of the mortgagees could

in any manner affect their validity. *Parsons v. Parsons*, 45 Mo. 265; *Hall v. Hall*, 107 Mo. 101. In *Sneathen v. Sneathen*, 104 Mo. 201, it is said: "The rule that the grantor must part with all dominion and control over the deed does not mean that he must put it out of his physical power to procure repossession of it."

But it is contended that as Garvin, the mortgagor, was not a resident of this state but of the state of Kansas at the time of the execution of the mortgages, they were not entitled to record, as the statute (Sec. 5176, R. S. 1889) makes no provision for recording such mortgages, and, therefore, the mere fact of handing them to the recorder to be recorded was no delivery to the interpleaders. This can, in our opinion, make no difference in this case, as the delivery of the mortgages to the recorder for the interpleaders, was a good delivery, as to the mortgagor, whether they were entitled to record or not.

But as against the attaching creditors something more than a mere delivery to a third person for the benefit of the mortgagees, and the presumption of acceptance by them because of their beneficial provisions, is required; it must be shown that such delivery has been assented to by the mortgagees, and that they have done something equivalent to an acceptance of them. As to Smith, Allen & Allen and Powell, their acceptance was shown by their taking immediate possession of the property.

At the time Cox took possession of the merchandise he had no authority to act for any of the mortgagees, except those last named, nor was his act in so doing approved or ratified, so far as the evidence showed, by the other interpleaders, except Needles, before the levy of the attachment. The only evidence as to the ratification of Cox's acts by Needles in taking

possession of the goods for him and the Washington County Bank, and thus accepting the mortgage, was that of Cox himself, in which he stated that Needles came into his office at Springfield, about 9 o'clock of the morning of the seventh of September, 1891, and approved what he had done, and the attachment was not levied until the afternoon of that day. This having occurred before the rights of attaching creditors had intervened, we think there was a good acceptance of the mortgage, and that the rights of Needles and the Washington County Bank by reason thereof were superior to plaintiff's.

As to the other interpleaders, no acceptance of the mortgages by them was shown prior to the seizure of the goods. Ada Garvin testified that when her father came home on the third or fourth of September he told her that he had made an assignment for the benefit of his creditors. On the fifth of September she inclosed her notes against her father to Mr. Cox for collection, but when he received them is not shown. This was not such an acceptance as the law requires, which must be shown by some act or expression which would clearly indicate an acceptance of the mortgage. As to Mrs. Garvin's acceptance of the mortgage to her, there was no evidence at all. And the mere presumption that she did so, arising from the mortgage itself, as we have already seen, was not sufficient as against the rights of intervening creditors.

On the acceptance of the mortgages, the court declared the law in effect to be, that, although defendant executed the mortgages in question, and had them recorded, if the interpleaders did not accept the same, the issues must be found for plaintiffs, and the burden of proof showing such acceptance was on the interpleaders; yet it found for the interpleaders, and in so far as Ada Garvin and Mrs. Garvin were concerned,

there was no evidence whatever to support its finding.

In *Ensworth v. King*, 50 Mo. 477, it was held that the presumed acceptance of a deed by the grantee because it is beneficial to him, will defeat the lien of an attaching creditor; but that case is not supported by reason or authority, and should be overruled. It is criticised in *Bell v. Farmers' Bank*, 11 Bush, 34, in the following language: "We are of opinion that the doctrine is contrary to the decided weight of authority, that it is not supported by reason, and that its adoption would open the door to fraudulent preferences in a multitude of cases." It was disapproved in *Fischer Leaf Co. v. Whipple*, 51 Mo. App. 181.

In *Parmelee v. Simpson*, 5 Wall. 81, it was held that the placing of a deed to a party on record, the grantee being ignorant of the existence of the deed, and not having theretofore authorized or given his consent to its record, does not constitute such a delivery as will give the grantee precedence of a mortgage executed between the time of placing the deed on record and a formal delivery thereafter; that as a general thing a ratification of a grantor's unauthorized delivery can be made by the grantee; but not where the effect would be to cut out an intervening mortgage, for value. To the same effect are *Field v. Fisher*, 65 Mich. 606; *Woodbury v. Fisher*, 20 Ind. 387; *Dole v. Bodman*, 3 Metc. (Mass.) 139; *Schafer v. Reilly*, 50 N. Y. 61. And the same rule applies where the intervening right is acquired by proceeding in attachment. *Day v. Griffith*, 15 Iowa, 104; *Wallis v. Taylor*, 67 Tex. 431; *Welch v. Sackett*, 12 Wis. 243. The subsequent acceptance makes it operate only from the time of the acceptance, as to intervening interests. *Goodsell v. Stinson*, 7 Blackf. (Ind.) 437; *Woodbury v. Fisher, supra*; *Bell v. Farmers' Bank, supra*.

Although by rule of court interpleas in all cases of

garnishment and attachment are required to be filed within the first two days of the term to which such writs are returnable, and the interplea of Needles and the Washington County Bank was stricken out on motion of plaintiffs because filed out of time, we do not think that the court committed reversible error in permitting an amended interplea to be filed during the term, over plaintiff's exceptions. Courts have control of their own rules, and it rests very much in their discretion as to whether they shall be rigidly enforced or not. We are not prepared to say that such discretion was abused or unreasonably exercised in this case. If plaintiffs were taken by surprise by the action of the court in permitting an amended interplea to be filed, they should have applied for a continuance upon that ground (Sec. 2128, R. S.) but as they did not do so but proceeded with the trial, the objection must be considered as having been waived.

There was no error committed in overruling the motion for new trial upon the ground of newly discovered evidence, with respect of the interplea of Needles and Washington County Bank, for, even admitting it as true that the register of the Ozark Hotel at Springfield showed that a man by the name of T. B. Needles registered at that hotel on the eighth day of September, 1891, it did not disprove the fact that he was in Cox's office in that city on the morning before, as stated by Cox, and could not, it seems, have produced a different result of the trial had it been shown in evidence.

There are other questions raised by counsel for plaintiffs in their briefs as to the legality of the claims of Ada and Mrs. Garvin, but as what has already been said results in a reversal of the judgment and remanding of the cause for a new trial as to them, it is not

deemed necessary to pass upon these questions at this time.

The judgment as to interpleaders Smith, Allen & Allen, Powell, Needles, and Washington County Bank, is affirmed; and, as to all other interpleaders appealing, is reversed and remanded.    All of this division concur.