## STURDIVANT BANK, Appellant, v. T. O. WRIGHT et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted June 4, 1914. Opinion Filed June 20, 1914.

1. **WITNESSES: Impeachment: Adverse Party.** A party who calls his adversary as a witness may not impeach him.

2. **INSTRUCTIONS: Cautionary Instructions: Credibility of Witnesses.** Where plaintiff introduced defendants as witnesses in its behalf, it had no right to impeach them, and hence the refusal to give an instruction requested by it, that, in determining the credibility to be given the testimony of any witness, the jury could take into consideration the interest of such witness, was not reversible error, since the instruction could have related only to the testimony given by defendants.

3. ———: ———: ———: **Expert Evidence.** In an action on a promissory note, where defendants denied their signatures, and much expert testimony concerning such signatures was introduced, an instruction, that the jury were the sole judges of the credibility of the witnesses and of the weight to be given their testimony, and were not bound to take the testimony of

any witness as absolutely true, but, in determining their credibility, the jury should take into consideration their demeanor on the witness stand and means of knowledge and apparent candor in giving their testimony, and if the jury believed that any witness had willfully sworn falsely to any fact, they were at liberty to disregard the whole or any part of such witness' testimony, "and in this connection you are instructed that the testimony of experts is not given as statements of facts, which you are bound to believe, but merely as opinions of the witnesses, and as such it should be received and viewed by you in connection with all the other evidence in the case," was not erroneous as being an undue comment on the evidence or as singling out testimony, nor as tending to unduly prejudice the jury against expert testimony because it informed them, immediately after the charge as to false swearing, that the testimony of experts was not given as a statement of facts but merely as the opinion of the witnesses.

4. COMMON LAW: Extent of Operation. The common law was adopted in this State only in so far as it is not repugnant to the laws of the State.

5. PLEADING: Common-Law Rights. The matter of pleading has no relation whatever to common-law rights.

6. STATUTES: Construction: Statutes in Derogation of Common Law. Common law rights can be abridged only by distinct legislation, and it is such legislation, taking away a right theretofore enjoyed, that is to be strictly construed.

7. PLEADING: Denying Execution of Written Instrument: Statutes: Construction. Sec. 1985, R. S. 1909, providing that answers denying the execution of written instruments shall be verified, is not in derogation of the common law, and hence it it not to be strictly construed, under the rule requiring statutes in derogation of the common law to be so construed.

8. ———: ———: Negative Pregnant. An answer, in an action on a promissory note, that defendants did not sign and deliver the note to plaintiff, might have been liable to attack as containing a negative pregnant, by reason of its using the conjunctive "and" instead of the disjunctive "or."

9. APPELLATE PRACTICE: Pleading: Review: Necessity of Objecting in Trial Court. An objection that an answer is bad because it contains a negative pregnant must be raised in the trial court.

10. ———: Binding Effect of Theory at Trial. Parties are confined, in the appellate court, to the same issues as were tried below; so that, in an action on a promissory note, where defendants' answer averred that they did not sign and deliver the note to plaintiff, and plaintiff treated the answer as a denial

of the execution of the instrument and accepted the burden of proving the execution, plaintiff would not be heard to contend, on appeal, that the answer was not sufficient to cast that burden on it, on the theory that it did not comply with Sec. 1985, R. S. 1909, relating to denials of the execution of written instruments.

11. **BILLS AND NOTES: Evidence.** In an action on a promissory note purporting to have been signed by defendants, which was discounted by another, evidence that the person who discounted it, and who alone appeared in the transaction, disappeared shortly thereafter, was material, in view of the fact that defendants denied that they signed the note and that they were in any way parties to the transaction.

12. **APPELLATE PRACTICE: Matters of Exception: Prerequisites to Review.** Rules of a circuit court must be introduced in evidence or embodied in the record, to warrant consideration by the appellate court of an assignment of error predicated on an alleged violation of them.

13. **TRIAL PRACTICE: Rules of Court: Enforcement.** The trial court has control of its own rules and must know best their purpose and extent, and hence the question as to whether or not they shall be rigidly enforced is left very much to the discretion of the trial court.

14. **APPELLATE PRACTICE: Exclusion of Witnesses: Review.** While plaintiff's evidence was being introduced, his counsel stated to the court that he "desired the rule to be put on these witnesses," to which the court replied, "Very well." The rule the witnesses were placed under was not embodied in the record filed in the appellate court, and there was nothing in the record to show that the witnesses were advised of the rule or of any order of the court excluding them from the court room. On appeal, counsel for plaintiff assigned as error, that the court permitted a witness to testify for defendant after he had violated the order of the court excluding witnesses from the court room. *Held*, that the appellate court could not say, in the state of the record, that the trial court abused its discretionary power in permitting the witness to testify.

15. ————: **Matters of Exception: Prerequisite to Review.** It is a prerequisite to consideration by the appellate court of an assignment of error predicated upon remarks made by the trial court during the trial, that such remarks be complained of, and the attention of the trial court directed thereto, in the motion for a new trial.

16. ————: **Matters Reviewable: Conclusiveness of Finding.** It is not the province of the judges of an appellate court to

determine, from a comparison of signatures conceded to be genuine with signatures in dispute, whether or not the finding of the jury, that a disputed signature was not genuine, was unauthorized; that being a determination of a matter of fact and hence exclusively within the province of the jury.

17. **EVIDENCE: Expert Evidence.** The opinions of experts are not controlling; it being for the 'jury to determine the weight and sufficiency of such testimony.

18. **APPELLATE PRACTICE: Conclusiveness of Finding.** The verdict of a jury on conflicting evidence, which is affirmed by the trial court in overruling a motion for a new trial, is conclusive upon the appellate court.

19. **BILLS AND NOTES: Genuineness of Signatures: Sufficiency of Evidence.** In an action on a promissory note, where defendants denied their signatures, evidence *held* sufficient to sustain a verdict in their favor.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Oliver & Oliver* for appellant.

(1) The court erred in refusing to give plaintiff's instruction number 2. Plaintiff was entitled to have the jury instructed that in determining the credibility of the witnesses they might take into consideration their interest in the result of the suit. Bunker v. Hibler, 49 Mo. App. 563; R. S. 1909, Sec. 6354; Thompson on Trials (2 Ed.), sec. 2418. (2) The court erred in giving defendants' third instruction. The instruction as given, coupled two abstract statements of law that might be proper in some cases, but which, when coupled and united with the conjunctive phrase "and in this connection," could have but one effect, that being to prejudice the jury, unfairly discredit and destroy the effect of the testimony of the hand-writing experts introduced in behalf of the plaintiff. State v. Buchler, 103 Mo. 203; Evans v. Railroad, 16 Mo. App. 522; McCormick v. City of Monroe, 64 Mo. App. 197. (3)

The court .erred in giving defendants instruction number 2, which told the jury the burden of proof was upon the plaintiff bank. The answers filed by defendants are insufficient to cast the burden of proving the execution of the note on the plaintiff. The answers aver that the defendant "did not sign and deliver to the said Sturdivant Bank the note in the petition described." The Legislature in using the word "execution," had reference to "the manual signing of the instrument, and not to the act of delivery." Hammerslaugh v. Cheatham, 84 Mo. 13; Smith Company v. Rembaugh, 21 Mo. App. ·390. This section is in contravention of the common law and must be strictly construed. Having thus failed to file such a verified answer as is provided for in Sec. 1985, R. S. 1909, the execution of the note sued on was admitted, and the plaintiff was entitled to judgment on the pleadings and it was error to instruct the jury that the burden of proof was on the plaintiff. Lore v. Ins. Co., 92 Mo. App. 192; Faircloth v. Tinsley, 83 Mo. App. 586; Smith v. Rembaugh, 21 Mo. App. 390; Zervis v. Unnerstall, 29 Mo. App. 474.    (4)    The court erred in admitting incompetent, irrelevant and immaterial evidence.    (a) The court erred in permitting A. H. Burlison, one of the defendants, to testify that E. O. Braley left the county twenty days after the execution of the note. This testimony was wholly immaterial and was introduced for the sole purpose of suggesting inferentially to the jury that E. O. Braley had committed a forgery by signing defendants' names to the note sued on and that he had in a very short time thereafter left the county and had never been heard from since. The fact of Braley's leaving tended to prove no issuable fact and should not have been admitted.    (b)· The court erred in permitting Levi Burris to testify after he had violated the order of the court excluding witnesses from the court room. This witness was intelligent and fully understood the force of the court's or-

der. His testimony was highly prejudicial to the bank. His feeling against the bank is shown in the first and sixth questions and answers on page forty-three of the abstract. Brown v. McDaniel, 140 Mo. App. 522. (c) The court's voluntary statement or comment that "I don't see how a man can recollect things that never happened" was fatal error.

*Wammack & Welborn* for respondents.

(1) If the opinion of the jury as to the identity of the signatures upon the exhibits is to be supplanted by that of other witnesses, posing as experts, then the law should provide in such cases that such an issue of fact is to be determined, not by the ordinary jury, but by experts called as witnesses by the plaintiff. The jury saw respondents upon the witness stand and heard them testify and it was their peculiar province to say whether or not they were men whose testimony upon the point in controversy, the jury would accept as credible. In such a case as this this court will not interfere with the verdict of the jury. Dillender v. Lester, 155 Mo. App. 558. (2) The appellant complains of the failure of the court to give an instruction which told the jury that they were the sole judges of the credibility of the witnesses and in determining the credibility of the testimony of a witness, they might take into consideration the interest of the witness in the suit. This instruction is erroneous as a general proposition, as it in nowise meets the requirements of law as to an instruction upon the credibility of the witnesses. Furthermore, the interested parties in this case were offered by the appellant itself as its own witnesses and the rule is well settled in this State that where one offers even the adverse party in a suit as a witness, he cannot afterwards impeach said witness's credibility. Chandler v. Fleeman, 50 Mo. 239;

Claflin v. Dodson, 111 Mo. 195; Bensberg v. Harris, 46 Mo. App. 404.

REYNOLDS, P. J.—This action is upon a note for $670, payable sixty days after date, dated September 11, 1899, bearing interest at eight per cent per annum from maturity, and purports to be signed by E. O. Braley, L. Burris, T. O. Wright, A. H. Burlison, F. H. Wright and T. J. Wright, the name of the latter purporting to be signed by mark (X). The action was begun on October 8, 1909, and is against T. O. Wright, F. H. Wright and A. H. Burlison, who were all served with process. A credit of $148.18 was entered on the back of the note as of date March 11, 1901. Judgment was asked against defendants for the balance and interest. Burlison and the two Wrights answered under oath that they "did not sign and deliver to the said Studivant Bank the note in the petition described and filed with said petition."

There was a trial before the court and jury, at which trial plaintiff introduced evidence tending to prove that the money represented in the note was loaned by the bank to Braley and Burris on their credit and that of the other purported makers. Plaintiff introduced in evidence papers bearing the signatures of two of the defendants, which had been filed in connection with presentation of claims against Burris, who had been adjudged a bankrupt, the papers consisting of affidavits to proofs of the claim, admittedly signed by the Wrights, also a power of attorney signed by one of them, and also the answers in the case signed and sworn to by each of the defendants. These papers, admitted or proved to bear the signatures of defendants, and the note in controversy were submitted to a number of witnesses, who, testifying as experts in handwriting, gave it as their opinion that the signatures of the defendants to the notes were apparently written by the same parties who had

signed these papers. Some of these witnesses, on cross-examination, however, admitted that while there were points of similarity in the signatures, there were points of dissimilarity, but in their opinion the signatures on the papers and on the notes were by the same parties.

The president of the bank, who had been that or cashier for over forty years, and who was the individual who represented the bank in making the loan, testified that the transaction was mainly with Burris; that he, the cashier, had not seen the defendants sign the note; had had no dealings with them, but, testifying as an expert in handwriting, he gave it as his opinion that comparing the signatures on the note with those on the other papers, that they were the signatures of the defendants. He further testified that the money represented in the note had been turned over directly to Burris, either by handing it to him or remitting it by mail.

The defendants were placed upon the stand and examined by plaintiff as witnesses in its behalf. Each of them testified in the most unequivocal and emphatic manner that the signatures to the note were not theirs; that they had never signed this note, or any such note; had never signed a note of such an amount for any one; had no dealings with Braley or Burris calling for any such act, and had never in any way ratified the transaction; did not know that it was claimed that they were on the note until they were written to about it by the attorney for the bank a short time before the suit was instituted.

It further appeared that at the time this note was given, defendants were hauling logs to the mills conducted by Braley and Burris; were then small farmers, with no considerable means and while occasionally going on notes for small amounts for their friends, one of them going on a note for Burris or Braley for a small amount, about $50, that they had

never undertaken any obligation of the amount here represented, one of them saying that at that time he was not worth any such sum.

One of the makers of the note, Burris, subpoenaed as a witness by plaintiff, but put on the stand by defendants, contradicted the testimony of the president of the bank, to the effect that he, with Braley, had negotiated for the loan, the witness Burris testifying that he had never negotiated the loan and had never said a word to the president, then cashier, about it; had never seen him but once, and that was the year previous; that the loan was negotiated by Mr. Braley himself and that he (witness) signed it; that he knew the names of defendants were on the note, but did not know their signatures, did not see them sign, and did not know as a fact whether any of them had signed it.

One of the defendants testified that about October 1, 1909, Braley had left the country, and as far as the witness knew, had never been back since and that the witness does not now know where he is.

At the conclusion of the trial, after being instructed by the court, the jury returned a verdict in favor of defendants. Interposing a motion for new trial and excepting to that being overruled, plaintiff has duly perfected its appeal to our court.

There are five errors assigned here by the learned counsel for appellant, which we will consider in their order.

The first error assigned is to the refusal of an instruction asked by plaintiff, to the effect that the jury are the sole judges of the weight of the evidence and of the credibility of the witnesses, and that in determining the amount of credibility to be given to the testimony of any witness, the jury might take into consideration the interest of such witness or witnesses in the result of this suit. It is true that this instruction, almost in so many words, has been approved in a number of decisions by the Supreme Court as

well as by the appellate courts, but we know of no case in which it is decided that the failure to give such an instruction was error. It may be said of the refusal of this instruction that it could only relate to the testimony given by defendants. As in giving that testimony they were the witneses called and placed upon the stand and examined by plaintiff, it did not lie in the mouth of plaintiff to impeach or throw any slur upon the character of witnesses whom it had itself produced and tendered to the jury as credible witnesses in the case.

Furthermore, the court, at the instance of defendant, instructed the jury to the effect that they were the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each and all of the witnesses, and are not bound to take the testimony of any witness as absolutely true, but in determining the weight and credibility of witnesses, the jury should take into consideration their demeanor on the witness stand, their means of knowledge and apparent candor in giving their testimony, and if the jury believe any witness has wilfully sworn falsely to any material fact in the case the jury were at liberty to disregard the whole or any part of such witness's testimony, adding to that instruction this: *"And in this connection you are instructed that the testimony of experts is not given as statements of facts, which you are bound to believe, but merely as opinions of the witnesses, and as such it should be received and weighed by you in connection with all the other evidence in the case."* This appears in instruction number 3, given at the instance of defendants and will be referred to hereafter. But considering the first part of the instruction, it appears to us that the court fully covered all that was necessary to say by way of caution to the jury as to the testimony in the case. However, we place our denial of this first assignment on

the distinct ground that the refusal of this particular instruction asked by plaintiff was not reversible error.

The second assignment is to the giving of that part of defendants' third instruction which we have italicized. It is argued that putting this sentence or clause in the instruction in immediate conjunction with that concerning false testimony, had the effect of prejudicing the jury against the testimony of the experts in handwriting. It is claimed that this instruction, in coupling two abstract statements of law which might be proper in some cases if used independently, when coupled and united with the conjunctive phrase, "and in this connection," could have but one effect, that being to prejudice the jury unfairly and discredit the testimony of the handwriting experts introduced in behalf of plaintiff; that it was error to instruct the jury in connection with the charge concerning false swearing, "that the testimony of experts is not given to you as statements of facts which you are bound to believe." We do not think this part of the instruction bears this construction. It is in the form often given and approved. Nor has it ever been held to be an undue comment on evidence or as singling out testimony.

The third assignment of error is to the giving of an instruction at the instance of defendants, which among other things told the jury that as a matter of law the burden of proof is upon plaintiff, which must prove its case by a preponderance of the evidence. This is the part of the instruction on which error is assigned. It is argued in support of this assignment that the burden of proof was not upon plaintiff in this case because the answers filed by defendants are insufficient to cast the burden of proving the execution of the note on plaintiff; that the answers aver that defendants "did not sign and deliver to the said Sturdivant Bank the note in the petition described," and it is argued that section 1985, Revised Statutes

1909, provides that the execution of any instrument of writing charged to have been executed by the party and not alleged to have been lost or destroyed, shall be adjudged to be confessed, unless the party charged to have executed the same denies the execution thereof by answer or replication verified by affidavit. It is argued that the Legislature, in using the word "execution," had reference to the manual signing of the instrument and not to the act of delivery, and that this is clearly apparent because the purpose of the act was to cut off, as far as possible, frivolous and insincere defenses to suits founded on instruments of writing, by compelling a party who comes in with a concealed hand under the general denial to purge himself by affidavit before he can secure the delay and produce the annoyance too often incident to such pleas, and it is said that this section is in contravention of the common law and must be strictly construed. Referring to this latter claim of counsel, we are aware of no common-law rule governing the matter. Even if there was, it would yield to our statute, for in adopting the common law we adopted it only in so far as not repugnant to our own laws. The matter of pleading has no relation whatsoever to matters of common right—which latter are only to be abridged by distinct legislation, and it is such legislation, taking away a right theretofore enjoyed, which is to be strictly construed.

Learned counsel for appellant cite and refer to Smith Company v. Rembaugh, 21 Mo. App. 380, l. c. 394, in support of the proposition that the requirement of the verification of a denial of the execution of an instrument sued on was to cut off as far as possible frivolous and insincere defenses to suits founded on instruments of writing. That is true but has no application to the case at bar, for this denial of the execution and delivery of this note certainly did not have the effect of defendants coming in under a gen-

eral denial "with a concealed hand." The defendants here "showed their hand" in the most unmistakable manner by denying not only the execution but the delivery of this note. It is true that in using the conjunctive "and," instead of the disjunctive "or," the answers might have been liable to attack as carrying a negative pregnant. But no such defect was lodged against the answers in the trial court. Not only that, but the whole case was tried in that court on the distinct issue of fact as to whether defendants here had signed this note. Plaintiff not only accepted that issue but itself took the initiative in endeavoring to prove affirmatively, distinctly by the testimony of the defendants themselves, that defendants had signed the note. The plaintiff took up the burden of proving that itself. Parties are confined, in the appellate court, to the same issues tried at *nisi*. The cause was tried throughout as on the plea of *non est factum*. We therefore hold that assignment against the appellant.

The fourth assignment is that the court erred in admitting irrelevant, incompetent and immaterial evidence offered by defendants. Part of the evidence referred to in this assignment is that of one of the witnesses, to the effect that E. O. Braley, the unquestioned maker of the note, had left the country twenty days after its execution. It was objected to this that the testimony was wholly immaterial and introduced for the sole purpose of suggesting inferentially to the jury that Braley had committed a forgery by signing defendants' names to the note sued on, and that he, a very short time thereafter, had left the country and had never been heard from since. Even assuming that this construction may be placed upon the testimony and upon the absence of Braley, we are not prepared to say that it was immaterial, irrelevant or incompetent. Braley was not sued, was not served with process, was not present as a witness, but, beyond dispute, with Burris, was a principal debtor,

the one who had procured the money from the bank for the use of himself and Burris. It was not improper for the jury to be informed of the fact of Braley's disappearance in connection with the denial of the execution of the note by defendants, and it was a proper matter for consideration, that the man, who, beyond question, obtained the money on the note, who handled the note, had, in a short time thereafter, left the country and had not since been heard of so far as the witness knew.

Another ground urged in support of this assignment of the admission of incompetent testimony, is that the witness Burris had been permitted to testify after he had violated the order of the court excluding witnesses from the court room. All that appears in the abstract as to this is that when the president of the bank, testifying as a witness for plaintiff, had finished his testimony, in which he testified he had sent the money to Burris, counsel for plaintiff said to the court that he "desired the rule to be put on these witnesses." To this the court said, "Very well." That is all that appears in the record as to this matter. What the rule was under which the witnesses were to be put, does not appear. If counsel rely upon rules of court, they must be brought to our attention by being introduced in evidence or embodied in the record. Furthermore, it was long ago decided, "the inferior courts must know best the purposes and extent of their own rules" (Funkhouser v. How, 18 Mo. 47, l. c. 49); and that "courts have control of their own rules, and it rests very much in their discretion as to whether they shall be rigidly enforced or not." [Kuh v. Garvin, 125 Mo. 547, l. c. 564, 28 S. W. 847.]

In Rigdon v. Ferguson, 172 Mo. 49, l. c. 52, 72 S. W. 504, it is said, referring to affidavits which had been filed on a motion to strike out, "they related to matters of fact that passed in the presence of the court,

and of which the judge knew as such as the affiants. He certainly knew better than we can know from the affidavits in the record the facts in dispute, and was therefore better prepared to exercise a sound judicial discretion in the matter than is this court."

In Maloney v. Hunt, 29 Mo. App. 379, Judge PHILIPS, speaking for the Kansas City Court of Appeals, has set out the proper practice, when rules of court, the existence or nonexistence of which are involved, to be, either by the introduction of the rule, if one is of record, or if not of record, then by affidavit of counsel or other competent party.

Not only have we nothing before us in this case to show what rule of court the witnesses were placed under, but there is nothing in the record to show that this witness was advised of either the rule or of any order of the court. We are unable to say, from the action of the trial court, as shown in this record, that in permitting this witness to testify, the court abused its discretionary power.

The further point is made in support of this assignment of error that the court had voluntarily made a statement or comment to the effect that when a certain witness was being examined, he (the court) did not "see how a man can recollect things that never happened." This, it is said, was fatal error. It is sufficient answer to this assignment to say that no such point was made in the motion for a new trial, nor was the attention of the trial court, beyond the mere fact that exception was made at the time, called to this remark.

The fifth and final assignment of error is that the verdict was unsupported by substantial evidence and is wholly the result of prejudice, passion and sympathy for the defendant sureties. We have read all of the record in this case with very great attention. It is idle to claim that there was no testimony tending

to support the defense of defendants under their plea of *non est factum.* They were put on the stand as witnesses by plaintiff itself and testified in the most unequivocal manner that they had not executed this note. It is true that most of the witnesses called and placed upon the stand by plaintiff as experts, and there were a number of them, gentlemen of unimpeachable character and undoubted standing in the community, testified unequivocally that in their opinion the signatures to the notes were the signatures of the same persons who had signed the papers admittedly signed by defendants, although some of these witnesses admitted, while stating that as their conclusion, that there were variances and discrepancies between the signatures that might throw doubt upon their identity. The learned and industrious counsel for plaintiff has brought into our court the note as well as the various papers said to have been signed, in fact we may say admitted to have been signed by defendants, and ask us, on an inspection of them to determine that the verdict of the jury is contrary to the evidence in the case. We cannot do that for several reasons. In the first place, that would assume that the members of this court were experts in the determination and judgment of handwriting. Whether we are or not is a fact upon which we have not been examined and qualified. It would be unfair to defendants to have us now, in the capacity of experts, pass upon the genuineness of signatures. Counsel for defendants would have no opportunity whatever to examine us as to our qualifications as experts. In the next place, if we did assume to be experts in the determination of handwriting, and should say that in our opinion these signatures were identical and made by the same parties, that would be mere opinion evidence, and would be on a matter of fact that can only be determined by a jury. That is as much beyond our power, as it was beyond the power of the learned trial judge. While the testimony

in this case may be said to be strongly in favor of the identity. of these signatures on the notes with the signatures of defendants on papers admittedly signed by them, the question was one not only primarily but ultimately for the determination of the jury; a fact to be passed upon by them. No opinions of experts are controlling, however persuasive or however positive that testimony may be. It is for the jury to determine the weight and the credit to be given to witnesses so testifying. They can judge that from their manner of testifying, from their appearance, from their conduct on the stand. The conclusion of the jury on that, affirmed as it is by the action of the learned trial judge in overruling the motion for a new trial, is conclusive upon this court.

Moreover, beyond the positive denial of the defendants, there were other facts in evidence which tended to support that denial. These have been very briefly referred to. But the jury undoubtedly took them into consideration in arriving at their verdict. We cannot say that this is a case where the physical facts, the known laws of nature, are against the verdict. Counsel refer us to cases where verdicts have been overturned on that ground, but this is no such case.

Giving due and full consideration to the several assignments of error made by learned counsel for appellant, we can come to no conclusion other than that these assignments cannot be sustained.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.